RECEIVED
AUG 03 2026
8CC
U.S.C.A. 3rd CIRCUIT

No. 26-2507

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

**JOHN DOE,**
Plaintiff-Appellant,

v.

**THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,**
Defendant-Appellee.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 2:26-cv-02472-MAK (Hon. Mark A. Kearney)

# OPENING BRIEF OF PLAINTIFF-APPELLANT JOHN DOE

John Doe
P.O. Box 151133
Los Angeles, CA 90015
johndoediscriminationsuit@gmail.com
Plaintiff-Appellant, pro se

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................................6
STATEMENT OF RELATED CASES .................................................................7
STATEMENT OF THE ISSUES.........................................................................7
STATEMENT OF THE CASE............................................................................8
A. Factual Background ....................................................................................8
B. Procedural History.......................................................................................8
STANDARD OF REVIEW ..............................................................................11
SUMMARY OF THE ARGUMENT ..............................................................12
ARGUMENT..................................................................................................15
I. THE DISTRICT COURT COMMITTED LEGAL ERROR BY APPLYING MEGLESS AS A CATEGORICAL FILTER RATHER THAN AS A BALANCING TEST. .......................................................................................15
A. Megless requires case-specific weighing of the severity of the feared harm; its enumerated contexts are illustrative, not exclusive. ..................................15
B. The district court applied a categorical methodology and never weighed the severity of the harms shown. ......................................................................17
C. The stigma shown here is opprobrium analogous to criminal infamy, and it attaches to the claim itself...........................................................................18
D. Disclosure would inflict the very category of injury this lawsuit exists to remedy.............................................................................................................22
E. The countervailing considerations the district court invoked do not sustain the judgment........................................................................................23
II. THE DISTRICT COURT FAILED TO CONSIDER RELEVANT FACTORS AND RECORD EVIDENCE........................................................................26
A. The opinion never addressed the only documented, non-speculative safety evidence in the record. ..........................................................................27
B. The court answered a claim-specific deterrence inquiry with an aggregate statistic that cannot address it. .........................................................................29
C. The purely-legal-nature factor was disposed of without being engaged. ...30
D. The prejudice finding is unsupported by, and contrary to, the record........31

III. AT MINIMUM, THE DISTRICT COURT ERRED IN DENYING PROVISIONAL, PRETRIAL PSEUDONYMITY SUBJECT TO REEVALUATION....33

IV. IN THE ALTERNATIVE, THE COURT SHOULD VACATE AND REMAND FOR CONSIDERATION OF MATERIALLY CHANGED CIRCUMSTANCES....35

CONCLUSION....37

CERTIFICATE OF COMPLIANCE....39

CERTIFICATE OF SERVICE....39

## TABLE OF AUTHORITIES

**Cases**


Doe v. Blue Cross & Blue Shield United, 112 F.3d 869 (7th Cir. 1997) ..............19

Doe v. Borough of Morrisville, 130 F.R.D. 612 (E.D. Pa. 1990) ..........................16

Doe v. College of New Jersey, 997 F.3d 489 (3d Cir. 2021) ..........6, 11, 16, 18, 29

Doe v. Frank, 951 F.2d 320 (11th Cir. 1992) ......................................................22

Doe v. Independence Blue Cross, No. 22-2412 (E.D. Pa. July 22, 2022) .............16

Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate, 596 F.3d 1036 (9th Cir. 2010)..................................................................................................19

Doe v. McKesson, 322 F.R.D. 456 (M.D. La. 2017) ............................................28

Doe v. Megless, 654 F.3d 404 (3d Cir. 2011), cert. denied, 565 U.S. 1197 (2012)...................................................................................................passim

Doe v. Oklahoma ex rel. Board of Regents of University of Oklahoma, No. CIV-23-495-G, 2023 WL 6456499 (W.D. Okla. Sept. 28, 2023).........................30

Doe v. Provident Life & Accident Insurance Co., 176 F.R.D. 464 (E.D. Pa. 1997).............................................................................................19, 31

Doe v. Shakur, 164 F.R.D. 359 (S.D.N.Y. 1996)............................................25, 32

Doe v. Stegall, 653 F.2d 180 (5th Cir. Unit A 1981) ..........................13, 19, 24, 31

Doe v. University of Pennsylvania, No. 23-1613, 2024 WL 2575702 (3d Cir. May 24, 2024)...............................................................................10, 13, 23, 24

Doe v. University of Pennsylvania, No. 22-2689, 2023 WL 12242010 (E.D. Pa. Mar. 23, 2023) ...............................................................................................24

Doe #1 v. Syracuse University, No. 5:18-cv-0496, 2018 WL 7079489 (N.D.N.Y. Sept. 10, 2018), report and recommendation adopted, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020)..................................................................21, 26

Doe 1 v. Eastern New Mexico University Board of Regents, No. 2:23-cv-0362-GBW-JHR, 2024 WL 36060 (D.N.M. Jan. 3, 2024)........................23, 33, 34

Doe 1 v. NorthShore University HealthSystem, No. 1:21-cv-05683 (N.D. Ill. Nov. 30, 2021)................................................................................................22

Doe 167 v. Sisters of Saint Francis of Colorado Springs, No. 1:20-cv-00907-WJ-LF, 2021 WL 664006 (D.N.M. Feb. 19, 2021)...........................................33

Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058 (9th Cir. 2000) 19, 33, 34

Femedeer v. Haun, 227 F.3d 1244 (10th Cir. 2000) ........................................ 13, 22

James v. Jacobson, 6 F.3d 233 (4th Cir. 1993) ................................................ 12, 27

Landau v. Corporation of Haverford College, No. 24-2044 (E.D. Pa. Dec. 13, 2024) (ECF Nos. 29, 30) ........................................................................ 16, 18, 25

M.M. v. Zavaras, 139 F.3d 798 (10th Cir. 1998) ................................ 12, 26, 28, 32

Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185 (2d Cir. 2008) .................. 21, 22

Williams v. New Mexico State University, No. 2:23-cv-01059-GBW-KRS (D.N.M. Mar. 24, 2025) (Doc. 127) .................................... 25, 30, 32, 33, 34

In re Zoloft (Sertraline Hydrochloride) Products Liability Litigation, 858 F.3d 787 (3d Cir. 2017) ................................................................................. 12

**Statutes and Rules**

28 U.S.C. § 1291 ........................................................................................ 6

28 U.S.C. § 1331 ........................................................................................ 6

42 U.S.C. § 2000d et seq. (Title VI of the Civil Rights Act of 1964) .................. 6, 8

Fed. R. App. P. 4(a) .................................................................................... 6

Fed. R. App. P. 12.1 ................................................................... 15, 36, 37, 38

Fed. R. Civ. P. 62.1 ......................................................................... 15, 36, 38

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff-Appellant's complaint asserts a claim arising under federal law, namely Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. (JA 28 (ECF 1).)

This Court has appellate jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine. An order denying a litigant leave to proceed under a pseudonym is immediately appealable as a collateral order. Doe v. College of New Jersey, 997 F.3d 489, 494–95 (3d Cir. 2021). The district court itself recognized as much, citing College of New Jersey in the memorandum under review. (JA 23 (ECF 11 at 18 n.64).)

The order appealed from is the district court's May 27, 2026 memorandum and order denying Appellant leave to proceed under a pseudonym and directing the Clerk of Court to unseal Appellant's identifying information and amend the caption. (JA 5 (ECF 11, 12).) The order was entered on the docket on May 28, 2026. Appellant filed a timely notice of appeal on June 9, 2026, within the thirty days allowed by Fed. R. App. P. 4(a)(1)(A). (JA 2 (ECF 17).) On June 12, 2026, the district court stayed the Clerk's obligation to disclose Appellant's name pending this appeal. (JA 58 (ECF 16).)

## STATEMENT OF RELATED CASES

Pursuant to Third Circuit L.A.R. 28.1(a)(2), Appellant states that this case has not previously been before this Court. Appellant is the plaintiff in three other pending district court actions presenting related pseudonymity issues arising from separate admissions decisions: Doe v. President & Fellows of Harvard College, No. 1:26-cv-10486-ADB (D. Mass.); Doe v. Trustees of Dartmouth College, No. 1:26-cv-00343-SM (D.N.H.); and Doe v. Regents of the University of California, No. 2:26-cv-04743-MWC-PD (C.D. Cal.). No appeal is pending in any of those matters in any court of appeals. The district court's memorandum in this case discusses the Harvard action. (JA 10 (ECF 11 at 5–6, 14–15 n.1).)

## STATEMENT OF THE ISSUES

1. Whether the district court committed legal error in applying Doe v. Megless, 654 F.3d 404 (3d Cir. 2011), by treating categories of harm—social stigma and its professional consequences—as insufficient as a matter of law, rather than weighing the severity of the harms shown against the public interest in open proceedings, as Megless requires. (Raised at JA 46 (ECF 10-1 at 2–7); ruled on at JA 11 (ECF 11 at 6–9, 11–14).)

2. Whether the district court abused its discretion by failing to consider relevant factors and record evidence—including the only documented, non-

speculative safety evidence in the record and the claim-specific deterrence inquiry required by Megless—and by denying even provisional, pretrial pseudonymity subject to later reevaluation. (Raised at JA 48 (ECF 10-1 at 4–7); ruled on at JA 14 (ECF 11 at 9–14).)

## STATEMENT OF THE CASE

### A. Factual Background

Appellant applied to the Master of Business Administration program at the Wharton School of the University of Pennsylvania. (JA 31 (ECF 1 at 3).) His application presented a GMAT score in the top one percent of test takers—higher, on information and belief, than the scores of approximately ninety-five percent of admitted students—together with substantial professional achievements. (Id.) On April 19, 2024, the University notified Appellant that his application had been denied. (Id.)

On April 16, 2026, Appellant, proceeding pro se, filed a complaint under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., alleging that the University denied him admission because of his ancestry as a white, non-Jewish applicant. (JA 28 (ECF 1).) The complaint seeks compensatory damages and injunctive relief. (Id. at 4.)

### B. Procedural History

With his complaint, Appellant moved for leave to proceed under the pseudonym "John Doe." (JA 35 (ECF 2).) The motion asserted that public identification would expose Appellant to severe professional harm, social stigma, and risks to his physical safety. (Id.) Appellant simultaneously filed, under seal, a notice disclosing his legal name and contact information to the Court. (JA 26 (ECF 7).)

On April 20, 2026, the district court denied the motion without prejudice and directed Appellant, by May 6, 2026, either to file an amended complaint under his legal name or to show cause why the seal on his contact-information notice should not be lifted. (JA 39 (ECF 8).) The court's order was mailed separately from the summons that issued at the same time; Appellant, misunderstanding the sequence of steps required of him, believed his next obligation was to serve the summons, and did not discover the order until May 14, 2026, after the deadline had passed. (JA 42 (ECF 10 ¶ 3).) On May 16, 2026, he moved for leave to respond out of time under Fed. R. Civ. P. 6(b)(1)(B) and submitted a memorandum in support of pseudonymity. (JA 42 (ECF 10, 10-1).)

The memorandum identified three categories of anticipated harm. First, it asserted that public identification as the plaintiff in this action would result in effective exclusion from employment and entrepreneurial opportunity in Appellant's industry. (JA 46 (ECF 10-1 at 2–3).) Second, it asserted that the claims at issue

expose their proponent to an unusually severe public stigma: Appellant acknowledged that persons associated with such claims are commonly branded with labels—among them "antisemitic" and "Nazi"—that in contemporary discourse signify, in the memorandum's words, "the pinnacle of evil." (JA 48 (ECF 10-1 at 4).) Third, it asserted a risk to physical safety. In support of that assertion the memorandum cited, among other things, documented incidents in which publicly identified individuals who had voiced comparable views were subjected to violence or attempted violence at their homes, including an attempted armed intrusion by an individual who was subsequently killed in a confrontation with police, and a suspected arson at the home of another publicly identified individual. (JA 49 (ECF 10-1 at 5–6).)

On May 27, 2026, the district court granted leave for the late filing, deemed the memorandum filed, and denied pseudonymity on the merits. (JA 5 (ECF 11, 12).) Applying Doe v. Megless, 654 F.3d 404 (3d Cir. 2011), the court held that Appellant's professional and economic allegations failed because "[e]conomic harm is not sufficient under Megless"; that his stigma allegations amounted to "embarrassment"; and that his safety allegations were "non-specific, implausible and speculative." (JA 11 (ECF 11 at 6–9, 11).) In so holding, the court relied in part on this Court's nonprecedential decision in Doe v. University of Pennsylvania, No. 23-1613, 2024 WL 2575702 (3d Cir. May 24, 2024), affirming the denial of

pseudonymity to a different plaintiff in an unrelated action against the same defendant. (JA 11 (ECF 11 at 6–8).) The court's opinion addressed certain of the safety allegations individually but did not address the documented incidents of violence described above. (JA 14 (ECF 11 at 9–11).) The court further reasoned, in response to Appellant's argument that denials of pseudonymity would deter similarly situated claimants, that aggregate federal civil-rights filings had increased in recent years. (JA 23 (ECF 11 at 18–19 n.65).) The court directed the Clerk, on June 10, 2026, to lift the seal on Appellant's contact information, issue summons to Appellant's disclosed address, and amend the caption. (JA 5 (ECF 12).)

On June 9, 2026, Appellant filed a timely notice of appeal and an emergency motion to stay his disclosure obligations. (JA 2, 52 (ECF 14, 17).) On June 12, 2026, the district court granted the motion in part, staying the Clerk's obligation to disclose Appellant's name pending this appeal while permitting the action otherwise to proceed, including service of process. (JA 58 (ECF 16).) The University has since been served and has not yet appeared in this Court.

## STANDARD OF REVIEW

This Court reviews the denial of a motion to proceed under a pseudonym for abuse of discretion. Doe v. College of New Jersey, 997 F.3d 489, 493 n.3 (3d Cir. 2021) (citing Doe v. Megless, 654 F.3d 404, 407 (3d Cir. 2011)). A district court

abuses its discretion when its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact or when no reasonable person would adopt the district court's view." Ibid. (quoting In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig., 858 F.3d 787, 792 n.22 (3d Cir. 2017)). The application of a categorically incorrect legal standard is an "errant conclusion of law," and hence an abuse of discretion, without more. Megless, 654 F.3d at 407. Discretion in this area must be "informed": a court that fails "to take relevant factors into account" or that acts "on the basis of legal or factual misapprehensions respecting those factors" does not exercise the discretion the law contemplates. M.M. v. Zavaras, 139 F.3d 798, 803 (10th Cir. 1998) (quoting James v. Jacobson, 6 F.3d 233, 242 (4th Cir. 1993)).

## SUMMARY OF THE ARGUMENT

Megless establishes a balancing test, not a taxonomy. At step one, a litigant must show a "reasonable fear of severe harm"; at step two, the court weighs that fear against the public interest in open proceedings through nine non-exhaustive factors. Doe v. Megless, 654 F.3d 404, 408–10 (3d Cir. 2011). The district court did not perform that weighing. It resolved Appellant's professional-harm showing with a single categorical proposition—"[e]conomic harm is not sufficient under Megless"—and resolved his stigma showing by classifying it as "embarrassment,"

without at any point assessing how severe the feared harms actually are. That is a legal error, not an exercise of discretion. Courts within this Circuit, applying the same precedent, have recognized that Megless's enumerated examples are illustrative rather than exclusive and have granted pseudonymity on reputational and professional showings materially indistinguishable from Appellant's. The inconsistency among the district courts of this Circuit on that methodological question independently warrants this Court's clarification.

Had the required weighing occurred, Appellant's showing satisfies it. The stigma at issue is not garden-variety embarrassment. To be publicly branded an antisemite is, in contemporary American society, to bear an opprobrium "analogous to the infamy associated with criminal behavior," Doe v. Stegall, 653 F.2d 180, 185 (5th Cir. Unit A 1981)—a label that attaches to the claim itself, however temperately pleaded. And the harm disclosure would inflict is the very category of harm this lawsuit exists to remedy: professional exclusion. Where "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," pseudonymity is warranted. Femedeer v. Haun, 227 F.3d 1244, 1246 (10th Cir. 2000). This Court's nonprecedential decision in Doe v. University of Pennsylvania, No. 23-1613, 2024 WL 2575702 (3d Cir. May 24, 2024), on which the district court relied, is not to the contrary: it addressed reputational harm flowing from facts

particular to that plaintiff, not a stigmatic label that attaches to a category of claim however temperately asserted.

Separately, the district court's analysis omitted required inputs. The opinion never addressed the only documented, non-speculative safety evidence in the record. It answered a claim-specific deterrence argument with an aggregate statistic that cannot speak to the claim category at issue. It disposed of the purely-legal-nature factor without engaging it. And it credited a generalized assertion of prejudice to the University that the record contradicts, since the University knows or will know Appellant's identity and every substantive filing remains public. A decision reached without consideration of relevant factors is not an exercise of informed discretion.

At minimum, the court erred in denying even provisional relief. The pseudonymity balance is stage-sensitive, and courts routinely grant pretrial pseudonymity subject to reevaluation as litigation progresses. At the time of the ruling, the University had not been served and no discovery existed; the public-interest considerations that carry genuine weight at trial had no purchase, while the harm of disclosure was immediate and irreversible. Demanding trial-strength justification at the pleading stage inverted that calculus.

In the alternative, the Court should vacate and remand. The denial rests on a finding that Appellant's feared harms are "speculative." Events postdating the ruling bear directly on that finding, and the district court is the proper forum to assess them

in the first instance. Appellant is pursuing coordinated relief below under Fed. R. Civ. P. 62.1, and Fed. R. App. P. 12.1 supplies the mechanism for a limited remand should the district court indicate it would grant relief. In all events, the Court should continue the protection of Appellant's identity pending completion of any further proceedings, because disclosure would irrevocably moot the very question presented.

## ARGUMENT

### I. THE DISTRICT COURT COMMITTED LEGAL ERROR BY APPLYING MEGLESS AS A CATEGORICAL FILTER RATHER THAN AS A BALANCING TEST.

#### A. Megless requires case-specific weighing of the severity of the feared harm; its enumerated contexts are illustrative, not exclusive.

Megless prescribes a two-step inquiry. A litigant seeking pseudonymity must first show "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." 654 F.3d at 408. If that showing is made, "district courts should balance a plaintiff's interest and fear against the public's strong interest in an open litigation process," ibid., guided by nine factors this Court described as a "non-exhaustive list," id. at 409. The inquiry is comparative from beginning to end: "the public's interest in open judicial proceedings always runs counter to a litigant's interest in

anonymity—the question is whether the interest in anonymity outweighs the public's interest." Doe v. College of New Jersey, 997 F.3d 489, 496 (3d Cir. 2021).

Nothing in that framework establishes classes of harm that are ineligible as a matter of law. Megless's reference to contexts in which pseudonymity has been permitted—"abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality," 654 F.3d at 408 (quoting Doe v. Borough of Morrisville, 130 F.R.D. 612, 614 (E.D. Pa. 1990))—is expressly framed as "[e]xamples of areas where courts have allowed pseudonyms," ibid., not a closed set of qualifying subjects; indeed, Megless observed that every court of appeals to adopt a balancing framework "has agreed that their list of factors is not exhaustive." Id. at 409. District courts in this Circuit have read it exactly that way. In Doe v. Independence Blue Cross, No. 22-2412, slip op. at 2–3 (E.D. Pa. July 22, 2022), the court articulated Megless as a flexible, two-step balancing framework in which the enumerated contexts illustrate the kinds of interests that can satisfy step one rather than delimit them. And in Landau v. Corporation of Haverford College, No. 24-2044, slip op. at 4–7 (E.D. Pa. Dec. 13, 2024) (ECF No. 29), the court granted pseudonymity to college students whose feared harms—social ostracism for their beliefs concerning Israel, academic penalty, and campus intimidation—fit within none of the enumerated contexts. The court proceeded not by consulting a list but by measuring: it began by "identifying the harm that Plaintiffs fear," evaluated

"whether it is sufficiently severe" with the harms "aggregated," and deemed the resulting fears reasonable "given the volatility of the Israeli-Palestinian conflict on campuses nationwide." Id. at 4, 7.

Those decisions reflect the correct reading of Megless. Step one asks whether the feared harm is severe and the fear reasonable—questions of degree that require measuring the harm actually shown, not sorting it by label. A methodology that stops at the label forecloses the balancing this Court has twice held the analysis requires.

**B. The district court applied a categorical methodology and never weighed the severity of the harms shown.**

The opinion below did not measure; it classified. Appellant's showing of professional exclusion was resolved in a single sentence of law: "Economic harm is not sufficient under Megless." (JA 11 (ECF 11 at 6).) His showing of stigma was resolved by assigning it to the category of "embarrassment." (JA 13 (ECF 11 at 8–9).) At no point did the court ask the question step one poses: how severe, in fact, is the harm this record discloses, and is the fear of it reasonable? The word "severe" does the analytical work in Megless; it did none below.

The error is consequential precisely because the categories the court deployed are porous. "Economic harm" spans everything from a diminished job prospect to the destruction of a livelihood; "embarrassment" spans everything from

awkwardness to infamy. A rule that treats the entire span as uniformly insufficient cannot be squared with a precedent whose operative term is "severe." Nor does it reflect how courts within this Circuit administer that term. In Landau, the step-one threshold was satisfied only when the plaintiffs' social, academic, and safety-related fears were considered "aggregated"—an exercise in measurement, not classification. Slip op. at 7. The decision below performed no such weighing. It took each of the three asserted harms in isolation, assigned each a disqualifying label, and never asked what the harms amounted to in combination—although Appellant's memorandum pressed them precisely that way, urging that "these three harms considered in combination constitute a reasonable fear of severe harm." (JA 46 (ECF 10-1 at 2).) This Court should make clear that Megless means what it says: severity is weighed, not presumed away by category. Cf. College of New Jersey, 997 F.3d at 495–96 (conducting factor-by-factor weighing).

**C. The stigma shown here is opprobrium analogous to criminal infamy, and it attaches to the claim itself.**

A word, first, about the authorities that follow. Megless did not arise in isolation; this Court built its framework from the national body of pseudonymity law. It drew the very definition of the step-one showing—"a fear of severe harm" that "is reasonable"—from the Ninth Circuit, 654 F.3d at 408 (quoting Doe v.

Kamehameha Sch./Bernice Pauahi Bishop Estate, 596 F.3d 1036, 1043 (9th Cir. 2010)); it stated the public-access principle in the words of the Ninth and Seventh Circuits, ibid. (quoting Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000), and Doe v. Blue Cross & Blue Shield United, 112 F.3d 869, 872 (7th Cir. 1997)); it surveyed the balancing tests of the sister circuits and found them in accord, id. at 408 & n.2; and it adopted its nine factors from the district-court synthesis in Doe v. Provident Life & Accident Insurance Co., 176 F.R.D. 464, 467–68 (E.D. Pa. 1997), endorsing that test because it "does not conflict with the tests that have been adopted by our sister circuits." Id. at 410. The "exceptional cases" formulation of the Tenth and Eleventh Circuits—matters of a highly sensitive nature, real danger of physical harm, or injury litigated against incurred by disclosure—maps the same territory as Megless's first step, which likewise reserves pseudonymity for "exceptional cases." 654 F.3d at 408. Appellant accordingly invokes the sister-circuit and district authorities below not as substitutes for Megless, but as demonstrations of how the severity inquiry Megless prescribes operates when it is actually performed.

When the severity of the stigma at issue is actually examined, it far exceeds embarrassment. The Fifth Circuit's decision in Stegall is instructive. There, plaintiffs challenging school prayer sought anonymity because the suit revealed beliefs that would expose them to community hostility. The court recognized that although "the

threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity," 653 F.2d at 186, anonymity was warranted where the litigants' filing "invited an opprobrium analogous to the infamy associated with criminal behavior," id. at 185—particularly given evidence of community reaction to the case itself. Ibid.

The label at issue here carries precisely that quality of infamy. In contemporary American public life, to be identified as an antisemite is not to be embarrassed; it is to be marked with a designation that forecloses professional association, invites public condemnation, and—as Appellant's memorandum put it, without contradiction below—signifies "the pinnacle of evil." (JA 48 (ECF 10-1 at 4).) The district court did not find otherwise. It found only that the stigma was of Appellant's own making because of the language of his pleadings. (JA 22 (ECF 11 at 17 n.48).) But the record establishes the narrower and dispositive point: the label attaches to the claim category itself. A Title VI complaint alleging, in the most restrained terms available, that a university's admissions process disfavors non-Jewish applicants will be publicly received as an accusation about Jewish beneficiaries—and its author will be branded accordingly. The stigma is a property of the claim, not of its drafting. The Megless analysis therefore had to confront it, and did not.

Doe #1 v. Syracuse University, No. 5:18-cv-0496, 2018 WL 7079489 (N.D.N.Y. Sept. 10, 2018), report and recommendation adopted, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020), is the closest factual analog in the reported case law, and it granted relief. There, students suing their university over discipline imposed for expression the university had publicly characterized as "racist, anti-Semitic, homophobic, sexist, and hostile to people with disabilities," 2018 WL 7079489, at *4, were permitted to litigate pseudonymously over the university's opposition. Applying the Sealed Plaintiff factors this Court itself surveyed in Megless, see 654 F.3d at 408 n.2 (setting out the factors of Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 190 (2d Cir. 2008)), the court found that the matters were sensitive and personal, that the risk of retaliatory harm weighed "heavily" in favor of anonymity, that an institutional defendant already privy to the plaintiffs' identities would suffer no prejudice—and that, absent anonymity, the plaintiffs "could be permanently marked as possessing the character traits attributed to them" by the university. 2018 WL 7079489, at *4–9. Whatever the governing formulation, the decision's significance here is its empirical finding: a federal court, examining the stigma of public association with precisely the label at issue in this case, adjudged that stigma severe enough to support anonymity. The severity of a societal label is a fact about society, not a function of circuit doctrine, and it does not diminish between Syracuse and Philadelphia. If anonymity was warranted for litigants publicly associated with

such labels there, the conclusion follows at least as strongly here, where the label arises from the assertion of a federal civil-rights claim itself. Cf. Doe 1 v. NorthShore University HealthSystem, No. 1:21-cv-05683 (N.D. Ill. Nov. 30, 2021) (permitting pseudonymous litigation where public identification would expose plaintiffs to hostility directed at the position their claims asserted).

**D. Disclosure would inflict the very category of injury this lawsuit exists to remedy.**

The severity analysis is confirmed by a principle with substantial circuit-level pedigree: pseudonymity is appropriate in "exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." Femedeer, 227 F.3d at 1246 (emphasis added); accord Doe v. Frank, 951 F.2d 320, 324 (11th Cir. 1992). Nor is the principle foreign to this Circuit: among the sister-circuit factors Megless surveyed and found consonant with its own test is "whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." 654 F.3d at 408 n.2 (setting out the Sealed Plaintiff factors).

That is this case. The injury litigated against is professional and educational exclusion on the basis of ancestry—the loss of the opportunities that admission to a

leading graduate business program exists to confer. The injury disclosure would inflict is professional exclusion of the same character: a plaintiff publicly branded with the label this claim attracts faces, on this record, effective disqualification from the professional opportunities the degree was sought to advance. (JA 46 (ECF 10-1 at 2–4).) A litigant should not be required to sustain the category of harm he sues to remedy as the price of the suit. Courts applying this principle have said as much. In Doe 1 v. Eastern New Mexico University Board of Regents, the court granted pseudonymity because "[p]ublicly revealing Plaintiffs' identities would facilitate the same injuries for which they are suing." 2024 WL 36060, at *4 (D.N.M. Jan. 3, 2024). The district court's categorical methodology never engaged this principle, though Appellant's memorandum squarely invoked the deprivation of livelihood as the operative harm. (JA 47 (ECF 10-1 at 3).)

### E. The countervailing considerations the district court invoked do not sustain the judgment.

Three rationales below warrant direct response. First, the court grounded its categorical treatment of professional and reputational harm in this Court's nonprecedential decision in Doe v. University of Pennsylvania, No. 23-1613, 2024 WL 2575702 (3d Cir. May 24, 2024), which affirmed the denial of pseudonymity to a plaintiff who feared that public association with her own suspension from a pre-

medical program would diminish her prospects of admission to medical school and of future employment. See Doe v. University of Pennsylvania, No. 22-2689, 2023 WL 12242010, at *2 (E.D. Pa. Mar. 23, 2023); accord 2024 WL 2575702, at *1 (reciting the plaintiff's allegation that she would "be forced to disclose and explain to medical schools and potential employers" her discipline for academic dishonesty). That decision does not control this case, for two reasons. As a nonprecedential disposition it binds no panel of this Court, and by its terms it held only that the record there failed at Megless's first step; it announced no rule that stigma is categorically insufficient, because no stigma of the character presented here was before it. The panel's own treatment of authority confirms the limited compass of its holding: it distinguished the cases cited by the plaintiff there as involving intimate partner violence, sexual assault, sexual misconduct, or analogous subjects, 2024 WL 2575702, at *2 n.2, and it described the harm actually before it, in terms drawn from Megless, as "embarrassment and economic harm." Id. at *2. More fundamentally, the mechanism of harm was different in kind. The plaintiff there feared reputational injury from the disclosure of true facts particular to herself—her suspension—a paradigm of the embarrassment and economic harm Megless holds insufficient. Here, by contrast, identification discloses no damaging fact about Appellant; rather, the act of asserting this category of claim triggers a societal label whose infamy is independent of any fact about the claimant. That is the Stegall mechanism—beliefs

revealed by the suit inviting opprobrium—not the embarrassment paradigm, and the 2024 decision never confronted it. Treating the two as interchangeable was not application of this Court's decision but misclassification of the harm.

Second, the court reasoned that the University would be prejudiced by defending "serious accusations" against an accuser proceeding "from behind a cloak of anonymity," quoting Doe v. Shakur, 164 F.R.D. 359, 361 (S.D.N.Y. 1996). (JA 18 (ECF 11 at 13–14).) But Megless contains no rule disfavoring plaintiffs as such; prejudice to the defendant is one consideration within a nine-factor balance, not a trump. And on this record the asserted prejudice is minimal. Appellant disclosed his identity to the court under seal at the outset, committed to disclosure to defense counsel for all purposes of discovery and litigation, and every substantive filing in the case remains fully public. (JA 26, 50 (ECF 7; ECF 10-1 at 6).) That is precisely the arrangement the Landau order adopted: names provided to the court under seal and revealed exclusively to defense counsel and college employees directly involved in the defense, with pseudonyms preserved in all public filings. Landau, Order ¶¶ 1, 3 (ECF No. 30). Where the defendant knows its accuser and only the public docket lacks a name, courts have found the burden on defendants and the public alike to be modest. Williams v. New Mexico State University, No. 2:23-cv-01059-GBW-KRS, slip op. at 17 (D.N.M. Mar. 24, 2025) (Doc. 127) (granting pretrial pseudonymity over defendants' opposition; use of pseudonyms "would impose only a relatively

modest burden" where "all filings remain open to public inspection, and the public is only denied access to the [plaintiffs'] identities"); accord Doe #1 v. Syracuse Univ., supra (institutional defendant; pseudonymity granted over opposition).

Third, the court observed that Appellant "chose the words" of his complaint and that inflammatory language was unnecessary to state a Title VI claim. (JA 22 (ECF 11 at 17 n.48).) Appellant does not defend the rhetoric of his pro se pleadings, and does not ask this Court to. The point that matters to the Megless analysis is the one made above: the stigma shown in this record attaches to the claim itself, in its most temperate form, because of what the claim necessarily alleges. The court's observation about drafting therefore cannot substitute for the severity analysis Megless requires; at most it bears on one factor among nine, in a balance the court never conducted.

## II. THE DISTRICT COURT FAILED TO CONSIDER RELEVANT FACTORS AND RECORD EVIDENCE.

Even apart from the categorical error, the decision below cannot stand as an exercise of informed discretion, because required inputs were never processed. "Failure to take relevant factors into account" in the pseudonymity analysis is "not an exercise of informed discretion, and hence potentially an abuse of discretion." M.M. v. Zavaras, 139 F.3d 798, 803 (10th Cir. 1998) (quotation and alteration

omitted); accord James v. Jacobson, 6 F.3d 233, 242 (4th Cir. 1993). Four omissions, each independently cognizable, mark the opinion below.

### A. The opinion never addressed the only documented, non-speculative safety evidence in the record.

Appellant's memorandum offered several grounds for its assertion of risk to physical safety. Some of those grounds the district court addressed and rejected as speculative, and this argument does not revisit that characterization. But the memorandum also cited documented, verifiable incidents: publicly identified individuals who had voiced views comparable to those the public will attribute to Appellant were subjected to violence or attempted violence at their homes, including an attempted armed intrusion that ended when the intruder was killed in a confrontation with police, and a suspected arson at the home of another such individual. (JA 49 (ECF 10-1 at 5–6).) These incidents are matters of public record; whatever weight they ultimately deserve, they are not speculation.

The opinion below does not mention them. It recites and rejects the memorandum's other safety grounds, and concludes that Appellant's "non-specific, implausible and speculative allegations do not constitute a 'reasonable fear of severe harm.'" (JA 16 (ECF 11 at 11).) A conclusion of speculativeness reached without engagement with the record's only concrete safety evidence is not a weighing of that

evidence. The court was not obliged to credit the incidents, to find them predictive, or to deem them sufficient; it was obliged to consider them. An opinion silent on the most probative material in the record on a contested factor does not permit meaningful appellate review of the discretion exercised, because the reasoning to be reviewed does not exist. Zavaras, 139 F.3d at 803.

Nor would the omission be cured by the analysis the court might have conducted. A court could permissibly discount third-party incidents on the ground that they were unconnected to this litigation, cf. Doe v. McKesson, 322 F.R.D. 456, 461–63 (M.D. La. 2017) (violence against similarly situated non-parties, unconnected to the lawsuit, insufficient), or could weigh them differently for other reasons. But permissibly discountable is not necessarily discounted, and the difference forecloses any suggestion that the omission was harmless. The Megless inquiry on this record asks what happens to publicly identified proponents of claims of this character; incidents involving precisely such persons are direct evidence on that question even though they arose from other controversies—a connection the McKesson officer's citation of ambient, occupation-wide violence lacked. Whether to discount or credit that evidence was accordingly a genuine judgment call, with the outcome unforeordained—which is precisely why the district court, and not this Court in the first instance, was required to make it. No such analysis occurred, and the appellate function cannot supply it.

### B. The court answered a claim-specific deterrence inquiry with an aggregate statistic that cannot address it.

Megless directs courts to consider, among the factors favoring anonymity, whether, if a litigant "is forced to reveal his or her name," "other similarly situated litigants [will] be deterred from litigating claims that the public would like to have litigated." Megless, 654 F.3d at 410; see Doe v. College of New Jersey, 997 F.3d 489, 495–96 (3d Cir. 2021) (weighing this factor). Appellant pressed that factor below, arguing that requiring public identification would deter similarly situated claimants from asserting this category of claim. (JA 51 (ECF 10-1 at 7).)

The district court's answer was an aggregate statistic: federal civil-rights filings across all categories rose approximately thirteen percent in a recent twelve-month period, and therefore "there is no basis to assume a 'chilling effect.'" (JA 23 (ECF 11 at 18–19 n.65).) That reasoning rests on a category error. The factor asks about deterrence of "other[s] similarly situated"—claimants whose suits would expose them to the specific stigma this record documents. Aggregate data spanning employment, disability, housing, and every other species of civil-rights litigation cannot speak to that question; a rising aggregate is fully consistent with complete deterrence within a narrow class. The factor calls for analysis of the claim category at issue. Substituting an irrelevant measurement is not that analysis, and the factor therefore remains unaddressed.

Nor is the deterrent effect conjectural. Courts have observed it operating. In Doe v. Oklahoma ex rel. Board of Regents of University of Oklahoma, No. CIV-23-495-G, 2023 WL 6456499 (W.D. Okla. Sept. 28, 2023), immediately after being ordered to reveal their identities, the plaintiffs dismissed their complaint. See id., Docs. 14, 15 (W.D. Okla.); Williams v. New Mexico State University, No. 2:23-cv-01059-GBW-KRS, slip op. at 16 n.12 (D.N.M. Mar. 24, 2025) (observing that denials of public anonymity "often lead[]" to precisely this deterrent effect). Where the price of asserting a claim is a stigma of the severity this record documents, the predictable result is that claims are surrendered rather than litigated—the precise outcome the Megless factor exists to weigh, and the one the aggregate statistic invoked below is incapable of detecting.

**C. The purely-legal-nature factor was disposed of without being engaged.**

Megless separately directs attention to "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities." 654 F.3d at 409. The opinion below addressed this factor jointly with the confidentiality-magnitude factor in two sentences keyed to Appellant's not being a victim of trafficking or domestic violence. (JA 17 (ECF 11 at 12–13).) That observation answers the third factor's question about the public

interest in maintaining confidentiality; it does not engage the fourth factor's distinct inquiry.

That inquiry has force here. The gravamen of this action is institutional: whether the admissions practices of a federally funded university comply with Title VI. The questions that will decide it—the criteria the University applies, and their lawfulness—are questions about the University's conduct and legal obligations. The identity of the individual applicant adds little to public comprehension of those issues; the public's ability "to follow the proceedings" and scrutinize the court's performance is unimpaired by a pseudonym, since every filing, argument, and ruling remains public. Cf. Doe v. Stegall, 653 F.2d 180, 185 (5th Cir. Unit A 1981) ("Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them."); Doe v. Provident Life & Accident Ins. Co., 176 F.R.D. 464, 468–69 (E.D. Pa. 1997) ("Doe's use of a pseudonym will not interfere with the public's right or ability to follow the proceedings."). The factor was Appellant's to lose in the balance, but it was never weighed.

**D. The prejudice finding is unsupported by, and contrary to, the record.**

Finally, the court found that the University "would be prejudiced by requiring it to defend itself publicly against serious accusations of discrimination asserted by Mr. Doe 'from behind a cloak of anonymity.'" (JA 18 (ECF 11 at 13–14) (quoting

Shakur, 164 F.R.D. at 361).) The record does not sustain that finding. Appellant disclosed his identity to the court under seal with his initial filing and committed to full disclosure to the University's counsel for discovery and litigation. (JA 26, 50 (ECF 7; ECF 10-1 at 6).) The University will know precisely whom it faces; it will be able to investigate, depose, and test credibility without impediment; and the public will read every substantive filing on both sides. What the balance actually presented, on this record, was the public's interest in one datum—a name—against the concentrated and irreversible consequences of disclosure to the litigant. Courts confronting that configuration have found the burden of pseudonymity on defendants and the public to be modest. Williams v. New Mexico State Univ., slip op. at 18–19 (rejecting, as resting on a notion of "reputational parity," the argument that a publicly accused institutional defendant is unfairly prejudiced by a plaintiff's pseudonymity where the defendant knows the plaintiff's identity). The opinion below adopted the generalized formulation and did not engage the record's specifics; that, too, is a relevant consideration left unweighed.

Each omission above independently satisfies the Zavaras standard; together they establish that the balance Megless requires was never struck. The judgment should be reversed on this ground as well.

## III. AT MINIMUM, THE DISTRICT COURT ERRED IN DENYING PROVISIONAL, PRETRIAL PSEUDONYMITY SUBJECT TO REEVALUATION.

The pseudonymity balance is not fixed at the moment of filing; it is stage-sensitive. "[T]he balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses." Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1069 (9th Cir. 2000). Courts accordingly grant pseudonymity for pretrial proceedings while expressly reserving the question for trial, when credibility determinations and the jury's role give the public's interest its full weight. Williams v. New Mexico State Univ., No. 2:23-cv-01059-GBW-KRS, slip op. at 19–20 & n.15 (D.N.M. Mar. 24, 2025) (granting pseudonymity "during pretrial proceedings" and "pass[ing] no judgment" on trial; collecting authorities); Doe 167 v. Sisters of St. Francis of Colo. Springs, No. 1:20-cv-00907-WJ-LF, 2021 WL 664006, at *3 (D.N.M. Feb. 19, 2021) ("The Court recognizes that, should this case proceed to trial or other developments arise, this balance could change. Accordingly, the Court remains open to reevaluating its conclusion should the need arise."); Doe 1 v. E. N.M. Univ. Bd. of Regents, 2024 WL 36060, at *1 (D.N.M. Jan. 3, 2024) (granting leave to "proceed under pseudonyms in pretrial proceedings").

Nothing in Megless forecloses that calibrated course. Megless prescribes what a district court must weigh; it does not address, much less restrict, the temporal scope of the resulting order, and the authority to tailor protective arrangements to the phase of a case is a routine incident of the district courts' management of their dockets, exercised daily in the administration of sealing and protective orders. Nor would a provisional grant be an innovation: the stage-sensitivity of the anonymity balance is established at the circuit level, Advanced Textile, 214 F.3d at 1069, and operationalized in practice, Williams, supra; ENMU Regents, supra. Indeed, stage-sensitivity is not merely permitted by Megless's framework but follows from it. A balancing test yields the balance of the factors as they stand when it is applied. Applied at the pleading stage—where the trial-weighted public interests have no present force and the litigant's interest is at its irreversible maximum—the Megless factors themselves produce a provisional result, subject to recomputation as the inputs change. Refusing to consider provisional relief is therefore not fidelity to Megless; it is a refusal to balance the factors as they actually stood.

At the time of the ruling below, this case stood at the earliest point on that continuum. The University had not been served. No discovery existed. No witness's credibility was in issue; no jury will assess anyone's testimony for years, if ever. The public-interest considerations that carry genuine force at trial—confronting one's accuser before the factfinder, evaluating the demeanor of a testifying party—had no

present application. Against that minimal and deferrable public interest stood a harm that is immediate and irreversible: as Appellant argued below, once a litigant's identity is placed on the public docket, "the bell cannot be unrung." (JA 50 (ECF 10-1 at 6).) Disclosure now forecloses anonymity forever; anonymity now forecloses nothing, because the question remains open to reexamination at every subsequent stage on the University's motion or the court's own initiative.

The order under review nonetheless operates as a final, trial-strength determination rendered at the moment of minimum public interest and maximum irreversibility. Nothing in Megless compels that mismatch. Its factors are capable of stage-sensitive application, and the asymmetry of error here—where a wrongful denial is uncorrectable but a wrongful grant is freely correctable—counsels decisively for the provisional course. At a minimum, therefore, this Court should hold that on this record the denial of pretrial pseudonymity, subject to reevaluation at summary judgment or trial, exceeded the bounds of the district court's discretion, and should direct that Appellant be permitted to proceed pseudonymously during pretrial proceedings.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD VACATE AND REMAND FOR CONSIDERATION OF MATERIALLY CHANGED CIRCUMSTANCES.

The judgment below rests centrally on a factual characterization: that the harms Appellant fears are "speculative," "non-specific," and unrealized. (JA 14 (ECF 11 at 9, 11–12).) That characterization was made on a record that closed in May 2026. Appellant respectfully submits that developments postdating the ruling bear directly on it. Without asking this Court to receive or weigh matter outside the record—which Appellant recognizes it will not do—those developments may be described categorically: Appellant's parallel litigation has become the subject of press coverage of international circulation and of widespread public commentary characterizing its author in precisely the terms whose stigmatic force the memorandum below predicted, all while Appellant remains, for the moment, pseudonymous. That the reaction has attained such intensity notwithstanding Appellant's anonymity is itself significant: a response of that magnitude to filings bearing no name attaches to the claims themselves, and its force measures the very stigma whose existence the court below deemed speculative. Whether such developments confirm that the feared harms are materializing, and with what consequence for the Megless balance, are questions committed to the district court's judgment in the first instance, on an authenticated record and with the benefit of adversarial presentation.

A speculativeness finding cannot usefully be reviewed—or left standing—when the parties dispute whether intervening events have overtaken it. The orderly

course is the one this Court's rules already contemplate. Appellant is filing in the district court a renewed motion for leave to proceed under pseudonym, supported by the changed circumstances described above, pursuant to Fed. R. Civ. P. 62.1. Should the district court indicate that it would grant the motion, Fed. R. App. P. 12.1 authorizes this Court to remand on a limited basis while retaining jurisdiction. Should the district court deny or defer the motion, this Court retains the full range of its authority over the appeal. Either way, remand—whether limited under Rule 12.1 or by vacatur of the order below with instructions to reconsider in light of present circumstances—ensures that the pseudonymity question is decided on the record as it now exists rather than as it stood before the events most probative of it occurred.

One protective corollary is essential to any disposition. The subject of this appeal—and of any remand—is whether Appellant's identity may remain undisclosed. Disclosure during the pendency of those proceedings would irrevocably moot them. The district court recognized as much in staying disclosure pending this appeal. (JA 58 (ECF 16).) Whatever course the Court adopts, Appellant respectfully requests that the existing protection of his identity be continued until the pseudonymity question is finally resolved in whichever forum resolves it.

## CONCLUSION

For the foregoing reasons, the Court should reverse the order of the district court and direct that Appellant be permitted to proceed under a pseudonym, at minimum provisionally during pretrial proceedings subject to reevaluation. In the alternative, the Court should vacate the order and remand for application of the Megless balancing test in accordance with this Court's guidance and for consideration of materially changed circumstances, including by limited remand under Fed. R. App. P. 12.1 should the district court so indicate under Fed. R. Civ. P. 62.1. In all events, the Court should order that the existing protection of Appellant's identity continue pending final resolution of the pseudonymity question.

Respectfully submitted,

John Doe

P.O. Box 151133

Los Angeles, CA 90015

johndoediscriminationsuit@gmail.com

Plaintiff-Appellant, pro se

Dated: July 29, 2026

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 8,382 words, as counted by the word-count function of Microsoft Word. I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman, with double-spaced text.

John Doe, Plaintiff-Appellant, pro se

## CERTIFICATE OF SERVICE

I certify that on July 29, 2026, I served a true and correct copy of the foregoing Opening Brief of Plaintiff-Appellant, together with the Joint Appendix, upon counsel for Defendant-Appellee by first-class U.S. mail, postage prepaid, addressed as follows: Office of General Counsel, 2929 Walnut Street, Suite 400, Philadelphia, PA 19104-5099. I further certify that the foregoing was filed with the Clerk of this

Court by depositing the original and required copies in the United States mail, first-class postage prepaid, on July 29, 2026.

John Doe, Plaintiff-Appellant, pro se


JOHN DOE
(502) 286-3652
THE UPS STORE #4672
2202 SOUTH FIGUEROA ST.
LOS ANGELES CA 90007-2049
8 LBS
1 OF 1
SHP WT: 8 LBS
DATE: 30 JUL 2026
SHIP TO:
US COURT OF APPEALS THIRD CIRCUIT
OFFICE OF THE CLERK
RM 21400
601 MARKET ST
PHILADELPHIA PA 19106-1701
PA 191 9-65
UPS 2ND DAY AIR A.M.
2A
TRACKING #: 1Z 7R0 773 07 0155 6396
BILLING: P/P
REF #2: 2
MMYH.I7Y4XJ60F ISH 13.00C ZZP230 EP 20.5V 06/2026
SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.
RRD R 0626