In the

# United States Court of Appeals for the Third Circuit

Case No. 26-2507

JOHN DOE,
*Plaintiff-Appellant*,

v.

TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,
*Defendant-Appellee*.

*On Appeal from an Order entered by the United States District Court for the Eastern District of Pennsylvania*

**BRIEF OF APPELLEE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA**

**SAUL EWING LLP**
James A. Keller (PA 78955)
Patrick F. Nugent (PA 313979)
1735 Market St., 34th Floor
Philadelphia, PA 19103
P: 215-972-1964 / -7134
F: 215-972-4152 / -7725
james.keller@saul.com
patrick.nugent@saul.com

Dated: September 2, 2026

**United States Court of Appeals for the Third Circuit**

**Corporate Disclosure Statement and**
**Statement of Financial Interest**

No. 26-2507

JOHN DOE

v.

TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA

Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA (Name of Party) makes the following disclosure:

1) For non-governmental corporate parties please list all parent corporations: None

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

None

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

None

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

None

/s/ James A. Keller
(Signature of Counsel or Party)

Dated: September 2, 2026

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

STATEMENT OF JURISDICTION....................................................................4

STATEMENT OF THE ISSUE...........................................................................4

STATEMENT OF RELATED CASES AND PROCEEDINGS ..............................5

STATEMENT OF THE CASE...........................................................................6

I. Facts Alleged in Doe's Complaint .......................................................6

II. Procedural History and Rulings Presented for Review.........................7

SUMMARY OF THE ARGUMENT ..................................................................15

ARGUMENT ....................................................................................................18

I. Standard of Review ...........................................................................18

II. The District Court Did Not Abuse Its Discretion in Finding That Doe Failed to Establish a Reasonable Fear of Severe Harm ......................19

a. As a Threshold Matter, *Megless* Requires That a Plaintiff Wishing to Proceed Anonymously First Show a Reasonable Fear of Severe Harm ..........................................................19

b. The District Court Did Not Abuse Its Discretion in Finding Insufficient Each Harm Doe Asserts .......................................22

III. Even Assuming That Doe Satisfied the Reasonable Fear of Severe Harm Threshold, the District Court Did Not Abuse Its Discretion in Concluding That the Balance of *Megless* Factors Favor Disclosure of Doe's Identity ..........................................................................32

a. Doe Did Not Establish Any Countervailing Confidentiality or Public Interest Sufficient to Overcome the Presumption of Disclosure.........................................................................33

b. The District Court Did Not Abuse Its Discretion in Finding That the Bases for Anonymity Were Not Substantial.......................35

c. The District Court Did Not Abuse Its Discretion in Finding No Countervailing Public Interest in Maintaining Doe's Confidentiality .......................................................................37

d. The Remaining *Megless* Factors Likewise Weigh Against Doe's Use of a Pseudonym and Support the District Court's Decision ..........................................................................................38

IV. The District Court Did Not Abuse Its Discretion by Declining to Grant "Provisional" Pseudonymity .....41

V. Alleged Post-Order Developments Provide No Basis to Vacate and Remand .....43

CONCLUSION .....45

## TABLE OF AUTHORITIES

**FEDERAL CASES**


*B.L. v. Fetherman*,
No. 22-3471, 2023 WL 1818402 (D.N.J. Feb. 8, 2023), *aff'd,* 2023 WL 3004853 (D.N.J. Apr. 18, 2023) ....................12, 29, 30, 31

*Butler v. Homesite Ins. Co.*,
809 F. App'x 112 (3d Cir. 2020) ....................31

*Doe 1 v. Eastern New Mexico Univ. Bd. of Regents*,
No. 23-cv-0362, 2024 WL 36060 (D.N.M. Jan. 3, 2024) ....................42

*Doe 1 v. NorthShore University HealthSystem*,
No. 21-5683, 2021 WL 5578790, at *8–9 (N.D. Ill. Nov. 30, 2021)....................28

*Doe 167 v. Sisters of Saint Francis of Colorado Springs*,
No. 1:20-cv-00907, 2021 WL 664006 (D.N.M. Feb. 19, 2021) ....................42

*Doe v. Coll. of New Jersey*,
997 F.3d 489 (3d Cir. 2021) ....................4, 36, 40

*Doe v. Felician Univ.*,
No. 18-13539, 2019 WL 2135959 (D.N.J. May 15, 2019) ....................12, 29, 31

*Doe v. Hartford Life & Accident Ins. Co.*,
237 F.R.D. 545 (D.N.J. 2006)....................10, 11, 24, 25

*Doe v. Megless*,
654 F.3d 404 (3d Cir. 2011) ....................*passim*

*Doe v. President & Fellows of Harvard Coll.*,
No. 1:26-cv-10486-ADB (D. Mass.) ....................5, 24

*Doe v. Princeton Univ.*,
No. 20-4352 (BRM), 2020 WL 3962268 (D.N.J. July 13, 2020) ....................34

*Doe v. Regents of the Univ. of California*,
No. 2:26-cv-04743-MWC-PD (C.D. Cal.) ....................6

*Doe v. Rider Univ.*,
No. 16-4882, 2018 WL 3756950 (D.N.J. Aug. 7, 2018)....................11, 34

*Doe v. Stegall*,
653 F.2d 180 (5th Cir. 1981) ....................26

*Doe v. Temple Univ.*,
No. CIV.A. 14-04729, 2014 WL 4375613 (E.D. Pa. Sept. 3, 2014)............19, 37

*Doe v. Trs. of Dartmouth Coll.*,
No. 26-CV-0343-SM, 2026 WL 1715368 (D.N.H. June 12, 2026)...............5, 24

*Doe v. Univ. of Pennsylvania*,
No. 23-1613, 2024 WL 2575702 (3d Cir. May 24, 2024)...........................*passim*

*Jenkins v. Superintendent of Laurel Highlands*,
705 F.3d 80 (3d Cir. 2013) ....................42

*K.W. v. Holtzapple*,
299 F.R.D. 438 (M.D. Pa. 2014) ....................36

*Landau v. Corp. of Haverford Coll.*,
No. CV 24-2044, 2024 WL 5108442 (E.D. Pa. Dec. 13, 2024)...................16, 21

*Oddi v. Ford Motor Co.*,
234 F.3d 136 (3d Cir. 2000) ....................18, 43

*United States v. Cooper*,
437 F.3d 324 (3d Cir. 2006) ....................31

*Williams v. New Mexico State Univ.*,
348 F.R.D. 694 (D.N.M. 2025)....................42

*Williams v. Pennsylvania State Univ.*,
No. 23-3180, 2025 WL 971670 (3d Cir. Apr. 1, 2025)....................42

**FEDERAL STATUTES**

28 U.S.C. § 1331 ....................4

**FEDERAL RULES**

Fed. R. App. P. 4(a)(1)(A) ....................4

Fed. R. App. P. 10(a) ....................44

Fed. R. App. P. 12.1 ....................44, 45

Fed. R. Civ. P. 10(a)..........................................................................................19

## INTRODUCTION

Plaintiff-appellant John Doe ("Doe") appeals from the District Court's denial of his motion to proceed by pseudonym. The District Court's decision should be affirmed.

Only in exceptional cases are parties permitted to proceed anonymously, because "judicial proceedings, civil as well as criminal, are to be conducted in public." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (quotations omitted). "Identifying the parties to [a] proceeding is an important dimension of publicness. The people have a right to know who is using their courts." *Id.* (quotations omitted).

Doe does not present an exceptional case.

Doe was an unsuccessful applicant to the Wharton School of the University of Pennsylvania's renowned Master of Business Administration ("MBA") program in 2024 who believes that he was denied admission on the basis of protected class in violation of Title VI of the Civil Rights Act of 1964. There is nothing unique or exceptional about these claims, which are commonly litigated without anonymity.

And in fact, Doe is not concerned because he has filed a Title VI lawsuit. He is concerned because his public filings are littered with gratuitous and sweeping antisemitic, homophobic, and anti-veteran invective and conspiracy theories. Among other things, Doe's Complaint accuses "Jewish Supremacists" of having "effectively barred non-Jewish White males from prestigious educational programs"

in order to "keep them from attaining positions of power that may be used to obstruct the genocidal Jewish Supremacists" unless they "demonstrate a willingness to 'die4israel'(or at least a willingness to get f****d up the a*s)." (Compl., R. 1, at 4, JA31.)[1]

Doe's filings in support of his request to proceed anonymously do not back off of, but instead double-down on, the shocking rhetoric included in his Complaint. Doe argues that because of the purported domination of the business world by "HR Jews" and "VC Jews," disclosure of his identity "would result in Plaintiff's total, permanent debarment from traditional employment and entrepreneurship"; that because of Jewish social control, people who make "inflammatory claims" like those he chose to make in his Complaint are viewed as "the pinnacle of evil"; and that because "[t]he Jews are notorious, vicious murderers," he or his family may face harassment and violence by "Jewish agencies," "Jewish agents," or "conspiring Jews." (Mem. of Law, R. 10-1, JA45-51.)

In sum, Doe seems to fear that if he is unmasked as "an organizer and prolific

---

[1] The University has used asterisks to modify and not repeat the profanity that Doe includes in his Complaint.

"R." refers to the record citation and uses the document numbers from the District Court's docket. Citations to pages from documents on the District Court's docket refer to the page numbers assigned by the District Court's electronic case filing system.

contributor to online communities critical of Jews"—a fact which appears to have no relevance to his Complaint—he may face professional or personal consequences. (*Id.* at 5, JA49.) But his comments are not limited to online communities—as noted, he has made these very same attacks in the public filings that sit on the District Court docket. If Doe wants to make these sort of statements, he should stand behind them. The University is aware of no precedent which suggests that a plaintiff's desire to use the civil legal system as a vehicle to espouse gratuitous invective entitles him to the extraordinary relief of anonymity, and Doe cites none. The District Court got this right.

It is Doe's burden to demonstrate that the District Court abused its discretion in denying him permission to proceed using a pseudonym. He cannot do so. The District Court's decision is well-reasoned and faithfully applies this Court's precedent. The District Court examined Doe's claims about the harm that he fears he will suffer if not allowed to proceed anonymously and found that those fears, at best, constitute the kind of "embarrassment or economic harm" that this Court's precedent establishes "is not enough." *Megless*, 654 F.3d at 408. Even so, in the alternative and assuming Doe could establish the threshold showing that he reasonably feared severe harm, the District Court performed a balancing of the *Megless* factors and determined that Doe's interests do not outweigh the public's interest in open proceedings. Doe's criticisms of the District Court's decision lack

merit and fall far short of demonstrating an abuse of discretion. The District Court's decision should be affirmed.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 because Doe's Complaint asserts a claim under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. (*See* Compl., R. 1, at 3, JA30.)

This Court has appellate jurisdiction under the collateral-order doctrine. *See Doe v. Coll. of New Jersey*, 997 F.3d 489, 493 (3d Cir. 2021). An order denying a litigant leave to proceed under a pseudonym is immediately appealable as a collateral order. *Id.* at 494.

The District Court entered its Memorandum and Order denying Doe's request to proceed under a pseudonym and directing disclosure of Doe's identity on May 27, 2026. (*See* Mem. Op., R. 11, JA6; Order, R. 12, JA5.) Doe filed a timely notice of appeal on June 9, 2026. *See* Fed. R. App. P. 4(a)(1)(A); Notice of Appeal, R. 17, JA2. The District Court subsequently stayed disclosure of Doe's identity pending this appeal.

## STATEMENT OF THE ISSUE

Whether the District Court appropriately exercised its discretion when it denied Doe's request to conceal his identity through use of a pseudonym because (1) Doe failed to establish a reasonable fear of severe harm as a matter of law under

this Court's precedent in *Megless*, and (2) in the alternative, even assuming Doe had established a reasonable fear of severe harm, the balancing of the *Megless* factors favor disclosure of Doe's identity?

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court. The University is not aware of any related cases or proceedings within the meaning of Local Appellate Rule 28.1(a)(2). Doe states that he filed three other district court actions presenting related claims and pseudonymity issues arising from separate admissions decisions: *Doe v. President & Fellows of Harvard College*, No. 1:26-cv-10486-ADB (D. Mass.)[2]; *Doe v. Trustees of Dartmouth College*, No. 1:26-cv-00343-SM (D.N.H.)[3];

[2] In the *Harvard* action, the district court denied Doe's request to proceed pseudonymously, finding his asserted risks of reputational, professional, and physical harm uncorroborated and speculative. The court subsequently denied reconsideration and a stay pending appeal, again concluding that Doe had not overcome the presumption against pseudonymous litigation. After Doe failed to comply with the court's order requiring disclosure of his name and address, the court dismissed the action. Doe thereafter filed a notice of voluntary dismissal without prejudice. *See John Doe v. President and Fellows of Harvard Coll.*, No. 26-cv-10486-ADB, Document No. 7 (Feb. 2, 2026).

[3] In the *Dartmouth* action, the district court likewise denied Doe's request to proceed pseudonymously. The court concluded that asserted harm to his reputation, employment prospects, and financial status did not warrant anonymity and that his allegations of physical danger were unsupported by a particularized evidentiary showing and did not plausibly establish a legitimate threat to his safety. Doe moved to stay the disclosure requirement pending resolution of the appeal but thereafter voluntarily dismissed without prejudice. *See Doe v. Trs. of Dartmouth Coll.*, No. 26-CV-0343-SM, 2026 WL 1715368, at *2 (D.N.H. June 12, 2026).

and *Doe v. Regents of the Univ. of California*, No. 2:26-cv-04743-MWC-PD (C.D. Cal.)[4].

## STATEMENT OF THE CASE

### I. Facts Alleged in Doe's Complaint

Doe alleges that he applied to the University's Master of Business Administration program and that the University denied his application on April 19, 2024. (Compl., R. 1, at 4, JA31.) According to the Complaint, Doe had a Graduate Management Admission Test score in the top one percent of test takers and professional achievements that he characterizes as superior to those of typical admitted students. (*Id.*) He alleges that the University denied him admission because he is a "White, non-Jewish" male, in violation of Title VI of the Civil Rights Act of 1964. (*Id.*)

However, Doe identifies no University-specific fact suggesting that his race or non-Jewish heritage played any role in the admissions decision. Instead, Doe's theory of discrimination rests entirely on his own belief that Jewish people control

[4] Similarly, in the *California* action, the district court issued an order requiring Doe to effect service of the Complaint and Summons and to file proof of service by August 1, 2026, warning that failure to do so could result in dismissal of the action. The docket reflects that Doe did not file proof of service by the deadline, and no subsequent order extending that deadline appears on the record. Accordingly, the case appears to have been subject to dismissal for failure to prosecute or comply with court orders, or otherwise remains inactive absent Doe's compliance with the court's directive.

elite institutions to further the goals of "Jewish Supremacists." (*Id.*) The Complaint contains a number of outrageous, generalized allegations, including that "[t]he Jews are a racial supremacist organization whose stated goal is to exterminate and enslave all non-Jews" and that "[t]he University, like all prestigious educational institutions, is controlled by the genocidal Jewish Supremacists." (*Id.*) Doe further alleges that this purported conspiracy excludes non-Jewish White men from prestigious educational programs to prevent them from obtaining positions of power, subject only to exceptions for individuals who are "queer" or military veterans. (*Id.*) He attributes the denial of his own application to that alleged conspiracy and asserts that requiring non-Jewish White men to demonstrate a willingness to "die4israel" or "get f****d up the a*s" constitutes "an obvious violation of Title VI." (*Id.*)

Doe seeks more than $6 million in compensatory damages and injunctive relief against the University. (*Id.* at 5, JA32.)

## II. Procedural History and Rulings Presented for Review

Doe commenced this action on April 16, 2026 using the pseudonym "John Doe." (*Id.* at 2, JA29.) Along with filing his Complaint, Doe moved for leave to proceed pseudonymously and filed his identifying information under seal. (*Id.*; Mot. to Proceed in Pseudonym, R. 2, JA35-37.) On April 20, 2026, the District Court denied Doe's request without prejudice, concluding that he had not established a basis for the "exceptional allowance" to litigate anonymously. (Order, R. 8, at 1,

JA39.) The Court afforded Doe an opportunity to disclose his identity or to show cause why he should be permitted to proceed under a pseudonym. (*Id.*)

On May 16, 2026, Doe sought leave to file a memorandum of law out of time and an extension to respond to the show-cause order. (Mot. for Leave, R. 10, JA42.) He attached a memorandum identifying three asserted consequences of public identification: (1) "permanent professional debarment"; (2) "social stigma"; and (3) a threat of physical violence. (Mem. of Law, R. 10-1, JA45-51.)

As to professional harm, Doe alleged that human resources departments in his unidentified industry are disproportionately staffed by Jewish women ("HR Jews") who discriminate against non-Jewish White men, and predicted that disclosure would result in his complete exclusion from traditional employment. (*Id.* at 2, JA46.) He similarly alleged that any attempt to establish his own business would depend upon venture capital controlled by "VC Jews," who, he asserted, generally do not invest in businesses owned by non-Jewish White men. (*Id.* at 3, JA47.) Based on this asserted network of Jewish influence in corporate structures, Doe contended that disclosure of his identity would result in his permanent debarment from both traditional employment and entrepreneurship, depriving him of his livelihood and thereby constituting severe harm. (*Id.*)

Next, Doe attributed his anticipated social stigma to the very allegations he elected to present in his Complaint. He acknowledged that his Complaint makes

"inflammatory claims," and asserted that persons advancing such claims may be branded "antisemitic," "Nazi," "racist," "misogynist," "homophobic," "crackpot," or "unpatriotic." (*Id.* at 4, JA48.) Though he does not refute that those are appropriate terms to describe his views, Doe contended that this anticipated reaction would exacerbate the professional and physical harms he feared. (*Id.*)

Finally, Doe asserted that disclosure would endanger his physical safety. Among other things, he: (1) alleged that Israel's Intelligence agency, Mossad, murdered President John F. Kennedy; (2) suggested a connection between Mossad, Jeffrey Epstein, and Ghislaine Maxwell; and (3) asserted that he "may have already survived an assassination attempt" after a "busty Jewess" allegedly poisoned him during a romantic encounter. (*Id.* at 4-5, JA48-49.) Doe also cited incidents of suspected violence involving prominent individuals who had expressed criticism of Israel, arguing that those incidents demonstrated the danger he would face if publicly identified. (*Id.* at 5-6, JA49-50.)

On May 27, 2026, the District Court issued an Order concluding that Doe had not shown cause to proceed under a pseudonym. (Order, R. 12, JA5.) Under this Court's precedent, Doe first had to demonstrate a "reasonable fear of severe harm" from "litigating without a pseudonym." *Megless*, 654 F.3d at 408. If that threshold showing is made, the district court then balances that fear against "the public's interest in open litigation." *Id.* at 409.

Applying *Megless*, the District Court held that Doe had not shown a reasonable fear of severe harm sufficient to justify pseudonymity. (Mem. Op., R. 11, at 6-11, JA11-16.) The District Court addressed each of Doe's three asserted harms. It found that his predicted professional exclusion rested on generalized, speculative assertions about unidentified employers and venture capitalists and, at best, amounted to the type of embarrassment and economic harm that does not establish exceptional circumstances under *Megless*. (*Id.* at 6-8, JA11-13.) In doing so, the Court relied in part on *Doe v. University of Pennsylvania*, No. 23-1613, 2024 WL 2575702 (3d Cir. May 24, 2024), which affirmed the denial of pseudonymity where the plaintiff claimed that disclosure could affect medical-school admission and future employment. (*Id.* at 6-7, JA11-12.) The District Court concluded that Doe's allegations of future employment and economic harm were likewise insufficient. (*Id.*)

The District Court also rejected Doe's social-stigma theory. Doe relied on *Doe v. Hartford Life & Accident Insurance Co.*, 237 F.R.D. 545 (D.N.J. 2006), where an attorney suffering from bipolar disorder was permitted to proceed pseudonymously in an action challenging the denial of long-term disability benefits. The *Hartford Life* court reasoned that disclosure of the attorney's mental-health diagnosis could carry professional consequences because mental illness remained subject to a stigma that "society may not yet understand or accept." *Id.* at 550-51. The District Court

distinguished the *Hartford Life* circumstance from the reputational consequences Doe anticipates from gratuitous allegations he voluntarily placed in his Complaint. (Mem. Op., R. 11, at 8-9, JA13-14.) Indeed, Doe *himself* characterized his Complaint as containing "inflammatory claims," yet cited no authority establishing that the social or reputational consequences flowing from such self-described inflammatory allegations constitute a reasonable fear of severe harm. (*Id.*)

The District Court instead found persuasive *Doe v. Rider University*, No. 16-4882, 2018 WL 3756950 (D.N.J. Aug. 7, 2018), which denied pseudonymity to a student who feared the social, educational, and professional consequences of being publicly associated with a sexual-assault accusation. The *Rider* court reasoned that the relevant issue was not whether the plaintiff had committed sexual assault, but whether the university had afforded him a fair disciplinary process. *Id.* at *4-5. Applying the same reasoning, the District Court concluded that the issue here is not whether Doe is an antisemite based on the words he chose to use in his Complaint, but whether the University denied him admission because of his race and "non-Jewish heritage." (Mem. Op., R. 11, at 9, JA14.)

The District Court also considered and rejected Doe's asserted risk of physical violence. (*Id.* at 11-13, JA14-16.) It determined that his allegations concerning Mossad, the Kennedy assassination, the Epstein scandal, and the alleged poisoning were "non-specific, implausible and speculative" and did not establish a reasonable

fear of severe harm. (*Id.* at 13, JA16.) In reaching that conclusion, the District Court considered decisions rejecting pseudonymity where litigants alleged generalized hostility or public criticism but failed to identify a specific, credible threat of physical harm. (*Id.* at 11-13, JA14-16.) In *B.L. v. Fetherman*, No. 22-3471, 2023 WL 1818402, at *1, 4-5 (D.N.J. Feb. 8, 2023), *aff'd,* 2023 WL 3004853 (D.N.J. Apr. 18, 2023), the plaintiff brought civil-rights claims challenging a school district's response to the murder of George Floyd and related racial-justice issues. The court nevertheless found insufficient allegations that the plaintiff had been publicly vilified, that media coverage identified his family and residence, and that third parties had sought to pressure his child's college into rescinding its offer of acceptance. Likewise, in *Doe v. Felician University*, No. 18-13539, 2019 WL 2135959, at *1-4 (D.N.J. May 15, 2019), a Muslim Palestinian nursing student alleged that the university discriminated against and harassed her based on her religion, ancestry, and national origin. Despite allegations of stalking, cyberbullying, hostile blog posts, and offensive "hate speech," the court denied pseudonymity concluding that none amounted to a specific, credible threat of retaliatory physical harm.

The District Court did not end its analysis there. Although *Megless* requires balancing only after a litigant sufficiently alleges a reasonable fear of severe harm, which Doe had failed to do, the Court alternatively assumed that Doe satisfied that

threshold and considered the remaining factors. *See Megless*, 654 F.3d at 404, 409-10. The factors favoring anonymity include: (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives. *Id.* at 409 (citation omitted). Factors weighing against anonymity include the public's general interest in knowing litigants' identities, any heightened interest arising from the subject matter or status of the litigant, and whether opposition to anonymity is illegitimately motivated. *Id.*

As a preliminary matter, the District Court noted that Doe did not specifically address the *Megless* factors in his briefing. (Mem. Op., R. 11, at 11, JA16.) Nonetheless, applying those factors, the District Court found, among other things, that: (1) Doe had not shown that his identity had historically been confidential; (2) his asserted reasons for avoiding disclosure were not substantial; (3) the case did not implicate privacy interests comparable to those involving victims of sexual

violence, domestic violence, trafficking, or stalking; and (4) Doe had not demonstrated that similarly-situated litigants would be deterred from pursuing claims the public would want litigated. (*Id.* at 11-14, JA16-19.)

The District Court also rejected Doe's contention that permitting pseudonymity would cause no prejudice because he would disclose his identity privately to the University and its counsel. (*Id.* at 14, JA19.) The District Court reasoned that the University would be required to defend itself publicly against serious accusations of discrimination while Doe advanced those accusations "from behind a cloak of anonymity." (*Id.*) Considering the factors together, the District Court concluded that Doe had not overcome the strong public interest in open judicial proceedings even assuming he had satisfied *Megless'* threshold requirement. (*Id.*)

Accordingly, the District Court denied Doe leave to proceed under a pseudonym and directed the Clerk to disclose Doe's identifying information. (*Id.*) On June 12, 2026, the District Court stayed disclosure of Doe's identity pending resolution of this appeal, while permitting the underlying action otherwise to proceed. (Order, R. 16, at 1, JA58.) Doe now seeks this Court's review of the District Court's denial of leave to proceed pseudonymously.

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's denial of Doe's request to proceed under a pseudonym.

*First*, the District Court correctly applied this Court's precedent in *Megless*. A litigant must first establish a reasonable fear of severe harm before the court balances that interest against the strong public interest in open judicial proceedings. *Megless*, 654 F.3d at 408–09. The District Court examined the substance and support for each harm Doe asserted and reasonably concluded that his predictions of professional exclusion, anticipated stigma arising from his own gratuitous allegations, and claimed safety risk did not establish severe harm as a matter of law.

The District Court correctly found that Doe's claim of "permanent professional debarment" rests on speculation about unidentified future employers and investors, not any concrete threat to his livelihood. This Court recently rejected materially similar predictions of future educational and professional harm in *Doe v. University of Pennsylvania*, 2024 WL 2575702, at *2 (3d Cir. May 24, 2024). Doe's social-stigma theory fares no better. Identifying him would not involuntarily disclose a medical diagnosis, sexual victimization, or other intimate private fact; it would reveal the identity of someone who chose to file a Complaint containing self-labeled "inflammatory" and virulently antisemitic allegations. Similarly, Doe's physical safety theory identifies no specific, credible threat directed at him related to this

litigation. The incidents on which he primarily relies involve President John F. Kennedy, Jeffrey Epstein, and celebrity commentators in unrelated controversies that do not establish an objectively reasonable danger to Doe from public identification. Doe's new reliance on *Landau v. Corporation of Haverford College* does not demonstrate otherwise. No. CV 24-2044, 2024 WL 5108442 (E.D. Pa. Dec. 13, 2024). *Landau* was factually and procedurally distinct from the case at bar in numerous critical respects, and involved concrete, campus-specific evidence of intimidation and physical safety concerns. Even then, the District Court found the severe harm threshold satisfied only narrowly.[5]

*Second*, even assuming Doe satisfied the severe-harm threshold (which he does not), the District Court proceeded to apply the *Megless* factors and reasonably concluded that they favor disclosure. Doe's identity had not historically been confidential, his asserted bases for avoiding disclosure were insubstantial, he offered

---

[5] Indeed, *Landau* underscores why those circumstances matter. The plaintiffs permitted to proceed pseudonymously were two current students who remained exposed to the campus environment at the center of the litigation and presented evidence of ongoing social ostracism, academic consequences, and threats to their physical safety. *Id.* at *2-6. By contrast, Ally Landau was an alumna and proceeded in her own name, as the motion for pseudonymity was brought only by the two current students. *Id.* at *1. The court's narrowly favorable severe-harm determination thus rested on risks confronting students who continued to live and study within the allegedly hostile campus environment, not on the generalized reputational or professional consequences of publicly associating oneself with controversial allegations.

no evidence that similarly-situated litigants would be deterred from pursuing claims the public would want litigated, and this fact-intensive admissions dispute does not present an atypically weak public interest in knowing the plaintiff's identity. Doe's own decisions to abandon his Harvard and Dartmouth actions rather than proceed publicly may show that he prefers anonymity, but that is not evidence that similarly-situated litigants will be deterred.

The factors disfavoring anonymity are stronger still. The public has a recognized interest in knowing who invokes the federal courts, and the nature of Doe's allegations heightens that interest. Doe publicly accuses the University of being "controlled by the genocidal Jewish Supremacists" and alleges that non-Jewish White male applicants must demonstrate a willingness to "die4israel" or "get f****d up the a*s" to obtain access to prestigious educational programs. The University must defend its admissions practices, personnel, and community publicly against those accusations, while Doe seeks to conceal the identity of the person who chose to make them. Private disclosure to defense counsel does not cure that public asymmetry. Nor is there any comparably sensitive information about Doe that justifies insulating him from the ordinary public accountability accompanying federal litigation.

*Finally*, Doe's remaining arguments provide no basis for reversal. No precedent of this Court requires the District Court to grant provisional pseudonymity

merely because the litigation was at an early stage, and Doe failed to preserve this argument for this Court's review because he did not raise it below. Additionally, the public interest in knowing who uses the courts arises at the time of filing the Complaint, not only at trial. Finally, any purported publicity and commentary arising after the District Court's decision cannot demonstrate that the Court abused its discretion on the record before it, nor would it, if considered, have altered the District Court's analysis.

## ARGUMENT

### I. Standard of Review

This Court reviews the denial of a motion to proceed anonymously for abuse of discretion. *See Megless*, 654 F.3d at 407. A district court abuses its discretion when it "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact," or "when no reasonable person would adopt the district court's view." *Id.* (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)). Reviewing courts should "not interfere with the district court's exercise of discretion unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Oddi*, 234 F.3d at 146 (quotations omitted).

## II. The District Court Did Not Abuse Its Discretion in Finding That Doe Failed to Establish a Reasonable Fear of Severe Harm

### a. As a Threshold Matter, *Megless* Requires That a Plaintiff Wishing to Proceed Anonymously First Show a Reasonable Fear of Severe Harm

"[O]ne of the essential qualities of a Court of Justice [is] that its proceedings should be public." *Doe v. Temple Univ.*, No. CIV.A. 14-04729, 2014 WL 4375613, at *2 (E.D. Pa. Sept. 3, 2014) (quotations omitted); *cf.* Fed. R. Civ. P. 10(a) (requiring all parties to be named in the case caption). A plaintiff's decision to file suit in federal court therefore "comes with a consequence"—public disclosure of one's identity. *Temple Univ.*, 2014 WL 4375613, at *2 (citing *Megless*, 654 F.3d at 408). Courts have repeatedly recognized the strong presumption in favor of open and public proceedings, including the identification of parties to a proceeding. *See Megless*, 654 F.3d at 408 (identifying parties to a proceeding is "an important dimension of publicness" as people "have a right to know who is using their courts").

Permission to proceed anonymously is reserved for "exceptional cases." *Id.*; *see also id.* (permission to proceed under a pseudonym has been granted in cases involving "abortion, birth control, trans[s]exuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality" (quotations omitted)). Under *Megless*, a court's inquiry begins with a threshold requirement: the litigant must allege "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Id.* Only "[w]hen a litigant sufficiently alleges" that threshold harm

does the court proceed to balance the litigant's interests against the strong public interest in open judicial proceedings. *Id.* at 408-09.

This Court followed that sequencing two years ago in *Doe v. University of Pennsylvania*, where the Court described *Megless* as establishing a "two-step test": first, the plaintiff must allege a reasonable fear of severe harm from litigating without using a pseudonym; only if the plaintiff does so does the court proceed to the "balancing test to determine whether the party's reasonable fear of severe harm 'outweighs the public's interest in open litigation.'" 2024 WL 2575702, at *2 (3d Cir. May 24, 2024) (quoting *Megless*, 654 F.3d at 409). Because the plaintiff in that earlier case against the University alleged only anticipated reputational, educational, and employment consequences (to a putative medical professional career), this Court held that she "fail[ed] at step one" and affirmed without proceeding to the remaining factors. *Id.*

Doe therefore begins from an incorrect premise when he argues that the District Court was required to "weigh" his asserted economic and reputational injuries without first determining whether they constituted a reasonable fear of severe harm. (*See* Opening Br. at 15-18.) The non-exhaustive nature of the *Megless* factors does not eliminate the threshold requirement. Nor did the District Court create a taxonomy of qualifying and disqualifying harms. Rather, as discussed below, the District Court identified each harm Doe asserted, examined its basis, compared

his showing with relevant precedent, and concluded that his allegations did not cross the *Megless* threshold. (Mem. Op., R. 11, at 6-11, JA11-16.)

In resisting this conclusion, Doe relies heavily on *Landau v. Corp. of Haverford Coll.*, No. CV 24-2044, 2024 WL 5108442 (E.D. Pa. Dec. 13, 2024).[6] *Landau* does not support his position. The *Landau* plaintiffs presented evidence not merely of feared social or academic consequences, but of concrete and ongoing intimidation and physical safety-related concerns occurring on the campus where they were enrolled as students; and critically, the defendant institution of higher education did not oppose the use of a pseudonym in that matter. *Id.* at *2–4. The *Landau* court expressly recognized that social and reputational harms alone were insufficient to support anonymity, and concluded only "narrowly" that the plaintiffs' combined showing of credible threats to their physical safety established a reasonable fear of severe harm. *Id.* at *4-5; *see also id.* at *5 (describing the finding as "extremely close"). Nothing comparable exists here. Doe identifies no comparable threat, incident, or course of intimidation connected to him, the University, or this litigation. He is just worried that people will know of the hateful views that he otherwise openly holds and espouses.

---

[6] Doe did not cite *Landau* in his briefing before the District Court.

#### b. The District Court Did Not Abuse Its Discretion in Finding Insufficient Each Harm Doe Asserts

The District Court examined Doe's three asserted harms—speculative professional exclusion, social stigma, and a claimed risk of violence based on incidents involving unrelated third parties—and correctly found each to be unsupported and insufficient as a matter of law to clear *Megless*' threshold requirement.

##### i Doe's Prediction of Permanent Professional Debarment Is Speculative and Unsupported

The District Court reasonably rejected Doe's prediction that identifying him would permanently exclude him from traditional employment and entrepreneurship because *Megless* requires more than speculation about future economic and reputational consequences. Indeed, even setting aside the speculative nature of Doe's purported harms, *Megless* explicitly holds that "embarrassment or economic harm is not enough." 654 F.3d at 408. This Court recently followed this aspect of *Megless* in *Doe v. University of Pennsylvania*, where the plaintiff asserted that public identification would impair her ability to gain admission to medical school and secure future employment in the medical profession. 2024 WL 2575702, at *2 (3d Cir. May 24, 2024). This Court held that those educational and professional consequences amounted to embarrassment and economic harm, which cannot

establish a reasonable fear of severe harm as a matter of law and therefore fail *Megless*' threshold requirement. *Id.*

This Court's sister circuits have permitted parties to proceed anonymously when they come forth with evidence of extraordinary, concrete threats of retaliation and reprisal by identifiable actors. *See, e.g.*, *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1070-71 (9th Cir. 2000) (cited by Doe, in which garment workers faced firing, deportation, arrest, and imprisonment by their employers, recruiting agencies, and foreign governmental authorities if their identities became known). Doe's allegations bear no resemblance to those extraordinary circumstances.

Even as to his qualitatively less severe threatened "harms," Doe identified no employer that threatened to reject or terminate him, no venture capitalist that threatened to deny him funding, and no particular job or entrepreneurial opportunity jeopardized by this lawsuit. Instead, his theory rests on generalized, unsupported assertions that human-resources departments in his unidentified industry are disproportionately staffed by Jewish women ("HR Jews") who discriminate against non-Jewish White men and that venture-capital firms are also controlled by "VC Jews" who generally refuse to invest in businesses owned by non-Jewish White men. (Mem. of Law, R. 10-1, at 2-3, JA46-47.) From those assertions, Doe predicts complete and permanent exclusion from corporate employment and

entrepreneurship. The District Court acted well within its discretion in finding that chain of assumptions too speculative to establish the reasonable fear of severe harm required under *Megless*. (Mem. Op., R. 11, at 6-8, JA11-13.)[7]

**ii The Social Stigma That Doe Anticipates from Allegations He Voluntarily Placed in a Public Complaint Does Not Establish Severe Harm**

The District Court likewise reasonably rejected Doe's social-stigma theory of severe harm because disclosure of his identity would not involuntarily expose information of a uniquely private character. As set forth in *Megless*, anonymity may be warranted in cases involving abortion, birth control, mental illness, AIDS, sexual orientation, and similarly intimate matters. 654 F.3d at 408. The authority Doe cites fits that paradigm: identifying the plaintiff in *Hartford Life* would have revealed the bipolar disorder diagnosis at the center of his disability claim and disclosed private

---

[7] Two other federal courts confronted similar allegations from this same plaintiff and reached the same conclusion as the District Court did here. The District of Massachusetts found Doe's predicted professional harms uncorroborated and speculative when denying pseudonymity in the Harvard action. *See John Doe v. President and Fellows of Harvard Coll.*, No. 26-cv-10486-ADB, Document No. 7 (Feb. 2, 2026) (electronic order finding that Doe failed to rebut the presumption in favor of disclosure where the "alleged risks that Plaintiff sets forth in his motion are without corroboration and do not rise above a level of mere speculation"). The District of New Hampshire likewise concluded that the alleged harm to Doe's reputation, employment prospects, and financial status did not establish an exceptional case warranting anonymity. *See Doe v. Trs. of Dartmouth Coll.*, No. 26-CV-0343-SM, 2026 WL 1715368, at *2 (D.N.H. June 12, 2026).

medical information that could damage his legal career. *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006).

Nothing comparable would be exposed here. The only personal facts necessarily revealed by attaching Doe's name to this action are that he is a White, non-Jewish male, applied to the University, was denied admission, and elected to file a lawsuit alleging discrimination. The stigma he anticipates instead flows from the content of gratuitous allegations he chose to include in a public pleading.

That distinction defeats Doe's attempt on appeal to recast this case as a restrained Title VI action that inherently subjects any plaintiff to accusations of antisemitism. The District Court was entitled to evaluate the stigma associated with the Complaint Doe actually filed—not the sanitized version he now describes on appeal. That pleading asserts that "[t]he Jews are a racial supremacist organization whose stated goal is to exterminate and enslave all non-Jews," alleges that the University is "controlled by the genocidal Jewish Supremacists," and claims that non-Jewish White men are effectively required to demonstrate a willingness to "die4israel" or "get f****d up the a*s" to obtain access to prestigious educational opportunities. (Compl., R. 1, at 4, JA31.) Doe himself conceded below that his Complaint contains "inflammatory claims." (Mem. of Law, R. 10-1, at 4, JA48.) A plaintiff does not create an entitlement to anonymity by voluntarily publishing gratuitous, inflammatory accusations and then pointing to the predictable public

reaction to those accusations as the severe harm requiring concealment of his identity.

None of the out-of-circuit cases that Doe cites demonstrate that the District Court abused its discretion. *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) did not hold that fear of being labeled or of "opprobrium" spurred by disclosure of a person's unpopular views automatically establishes severe harm. To the contrary, the Fifth Circuit cautioned that "[t]he threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity." *Id.* Anonymity was appropriate in the *Stegall* case because multiple considerations converged: the plaintiffs included vulnerable minor children; the litigation exposed fundamentally private religious beliefs; and the record contained actual threats of violence and serious community hostility. *Id.* at 185–86. None of those features are present here, and *Stegall* did not establish a freestanding rule that any litigant who anticipates condemnation may proceed anonymously. Otherwise, the exceptional remedy would swallow the ordinary rule: many plaintiffs bring claims that expose them to criticism, embarrassment, or reputational consequences.

*Doe #1 v. Syracuse University* is also not analogous. *See* No. 518CV0496FJSDEP, 2018 WL 7079489, (N.D.N.Y. Sept. 10, 2018), report and recommendation adopted, No. 518CV00496BKSML, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020). In *Syracuse*, the defendant university had allegedly characterized the

plaintiff students' conduct publicly as "racist, anti-semitic, homophobic, sexist, and hostile to people with disabilities," and the students alleged concrete consequences from that public condemnation, including removal from classes, loss of employment and research positions, physical and verbal assaults, threats of physical harm, and the need to leave campus to avoid harassment. *Id.* at *6. The court expressly recognized that reputational, economic, and professional harm ordinarily do not justify anonymity standing alone, but found the case materially different because public identification would permanently associate the students with stigmatizing character traits that the university *itself* had attributed to them and which they expressly denied they held. *Id.* Here, by contrast, the University did not publicly label Doe or attribute any stigmatizing characteristic to him, and he identifies no comparable history of university-imposed stigma, targeted harassment, or concrete retaliation. Doe anticipates that members of the public may characterize him based on gratuitous words he chose to include in his own Complaint. Unlike the *Syracuse* plaintiffs, Doe does not assert that he has been falsely accused of having certain views with which, if denied anonymity, he would be forever associated; rather, he asserts that he *does* hold such views, and seeks that the Court grant him extraordinary relief so that he can publicly spread them without attribution, no matter how unnecessary they are to prove his case.

*Doe 1 v. NorthShore University HealthSystem* is even further afield. *See* No. 21-5683, 2021 WL 5578790, at *8–9 (N.D. Ill. Nov. 30, 2021). There, hospital employees sought to protect private religious beliefs and medical decisions concerning COVID-19 vaccination. *Id.* The plaintiffs offered evidence of pressure, intimidation, and harassment directed at them from their superiors at work, including an incident at which law enforcement allegedly had to intervene to remove a person harassing one plaintiff. *Id.* The court found those circumstances, together with the private religious and medical information at stake, sufficient under Seventh Circuit law to justify use of pseudonyms. *Id.* Doe identifies neither comparable private information nor comparable individualized harassment.

Doe's reliance on a sister-circuit formulation that anonymity may be appropriate where "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity" is misplaced. (Opening Br., at 13.) The injury litigated against here is an alleged discriminatory denial of admission to the University's MBA program. Disclosure of Doe's identity cannot cause that past admissions decision. Doe attempts to redefine the injury at a much higher level of generality—as "professional and educational exclusion on the basis of ancestry"—and then argue that anticipated future blacklisting is the same injury. (Opening Br., at 22.) But, his Title VI claim challenges the University's admissions decision, not hypothetical future employment actions by unrelated third parties.

In sum, the District Court reasonably concluded that Doe's anticipated social stigma did not establish the kind of extraordinary and severe, privacy-based harm required to overcome the ordinary consequence of filing suit in a public court.

**iii The District Court Did Not Abuse Its Discretion in Finding No Individualized, Credible Threat to Doe's Physical Safety**

Finally, the District Court reasonably rejected Doe's claims of severe harm to his physical safety because he identified no credible threat directed at him.

A fear of physical retaliation can constitute severe harm, but the fear must be objectively reasonable and supported by more than generalized hostility or remote possibilities. *See Megless*, 654 F.3d at 408. Courts applying *Megless* distinguish a concrete threat to the litigant from generalized anger, offensive commentary, or unrelated acts of violence. *See, e.g.*, *B.L. v. Fetherman*, No. 22-3471, 2023 WL 1818402, at *4–5 (D.N.J. Feb. 8, 2023), *aff'd*, 2023 WL 3004853 (D.N.J. Apr. 18, 2023); *Doe v. Felician Univ.*, No. 18-13539, 2019 WL 2135959, at *3–4 (D.N.J. May 15, 2019).

Doe offered no evidence that he has been or will be subject to such an individualized threat. No person has threatened him because of this lawsuit, and he points to no incidents of threats involving plaintiffs suing the University, bringing an admissions discrimination action, or otherwise asserting a comparable Title VI claim. Instead, Doe cites the assassination of a former United States President, purported blackmailing activities of Jeffrey Epstein and Ghislaine Maxwell (whom

he describes as "likely Mossad agents"), and violence attempted against public celebrity commentators Nick Fuentes and James Fishback. (Mem. of Law, R. 10-1, at 4-6, JA48-50.) On this basis, Doe asked the District Court to infer from violence allegedly directed at others who are not similarly-situated that he personally faces a similar risk of physical attack or loss of life. The District Court's rejection of that inference is not an abuse of discretion.

Doe's final attempt at establishing a threat to his physical safety likewise falls short. Doe alleges that he "may have already survived an assassination attempt" during a pre-suit romantic encounter in which he believes a Jewish woman poisoned him. (Mem. of Law, R. 10-1, at 4-6, JA48-50.) Even assuming that Doe did experience the physical symptoms he describes and which he posits are evidence that he was poisoned, he alleges no facts connecting that event to the University, this lawsuit, or the future disclosure of his identity. An unexplained event predating the lawsuit does not establish that litigating this lawsuit publicly creates an objectively reasonable threat of retaliation.

The cases that the District Court cites illustrate how far short of the threshold requirement Doe's allegations fall. In *Fetherman*, a parent challenging a school district's curriculum alleged that members of the public portrayed him as a "villain," media reports identified his family and residence, third parties made alarming comments concerning his professional life, and individuals sought to pressure his

child's college to rescind an offer of admission. 2023 WL 1818402, at *1, *4–5. Even there, the court found only a "vague possibility of physical harm," not a credible threat warranting anonymity. *Id.* at *5. Likewise, *Felician University* involved hostility directed at the actual plaintiff, a Muslim woman of Palestinian descent who alleged stalking, cyberbullying, derogatory blog posts, and threats arising from her discrimination dispute with the university. 2019 WL 2135959, at *1–4. Although the postings at issue contained offensive and hateful speech, the court found no specific language creating a credible risk of retaliatory physical harm. *Id.* at *4.

If the plaintiff-specific circumstances in *Fetherman* and *Felician University* were insufficient, the District Court did not abuse its discretion in finding that the assassination of President Kennedy and violence allegedly experienced by others in unrelated controversies did not establish a reasonable threat to Doe.

Finally, Doe argues that the District Court's ruling must be overturned because the District Court did not directly address every anecdote in his memorandum. (Opening Br., at 26-28.) But, a district court need not respond specifically to every item mentioned in a brief to reach a reasoned conclusion. *See Butler v. Homesite Ins. Co.*, 809 F. App'x 112, 114 (3d Cir. , 2020) ("The court need not discuss every argument made by a litigant if an argument is clearly without merit.") (quoting *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006)). The District Court

addressed Doe's physical safety theory at length, identified the absence of a legitimate threat connected to him, and compared his allegations with cases involving substantially more direct hostility. (Mem. Op., R. 11, at 11-13, JA14-16.) That was more than sufficient.

In short, the District Court correctly and reasonably concluded that Doe failed to satisfy the first step of *Megless*. Because Doe did not establish a reasonable fear of severe harm, the District Court could have denied pseudonymity on that basis alone. However, as set forth below, the District Court did not conclude its analysis there; the District Court proceeded to weigh the *Megless* factors and find that, even if he had established a reasonable fear of severe harm, Doe's interests do not outweigh the public's interest in open litigation and access to the judicial process.

## III. Even Assuming That Doe Satisfied the Reasonable Fear of Severe Harm Threshold, the District Court Did Not Abuse Its Discretion in Concluding That the Balance of *Megless* Factors Favor Disclosure of Doe's Identity

When a litigant seeks to proceed anonymously, district courts must exercise their discretion to determine if exceptional circumstances exist and when those exceptional circumstances outweigh the strong public interest in open litigation. As explained above, the fact that Doe bases his request to proceed pseudonymously on fears of embarrassment and economic harm "is not enough." *Megless*, 654 F.3d at 408. The District Court's analysis need not have proceeded any further, and this Court may affirm on that basis alone.

Even so, the District Court proceeded to balance the *Megless* factors. (Mem. Op., R. 11, at 11-14, JA16-19.) The *Megless* factors assist courts in determining whether "a litigant's reasonable fear of severe harm outweighs the public's interest in open judicial proceedings," such that anonymity is appropriate. *Megless*, 654 F.3d at 408-09. *Megless* sets forth nine non-exhaustive factors—six favoring anonymity and three disfavoring anonymity. *Id*. The District Court weighed the factors appropriately in declining Doe's request to proceed pseudonymously.

As set forth below, Doe's challenges to the District Court's balancing of the *Megless* factors are meritless. Indeed, Doe did "not specifically address the *Megless* factors weighing in favor or disfavor of anonymity" below. (Mem. Op., R. 11, at 11, JA16.) While Doe may disagree with the District Court's balancing of the *Megless* factors, his disagreement does not amount to an abuse of discretion. For this reason, too, the District Court's decision denying Doe's use of a pseudonym should be affirmed.

#### a. Doe Did Not Establish Any Countervailing Confidentiality or Public Interest Sufficient to Overcome the Presumption of Disclosure

The first and fifth *Megless* factors consider "the extent to which the identity of the litigant has been kept confidential" and "the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified." 654 F.3d at 409. Neither favors Doe.

As to the first factor, nothing about Doe's identity was confidential before he commenced this action, "nor does he allege it has ever been confidential." (Mem. Op., R. 12, at 11, JA17.) He identifies no statute protecting his name, no confidential administrative or disciplinary proceeding, no protective order, and no preexisting privacy arrangement. His unilateral decision to file his contact information under seal after initiating this lawsuit does not itself create a historical confidentiality interest. Nor would identifying him reveal an independently protected personal fact. As discussed above, disclosure would reveal only that Doe is a non-Jewish White male who applied to the University, was denied admission, and chose to file this action. The District Court therefore correctly found that this factor did not favor anonymity. (Mem. Op., R. 11, at 12, JA17.)

As to the fifth factor, Doe's conduct suggests that he may personally refuse to litigate if required to identify himself. He voluntarily dismissed his Dartmouth action after pseudonymity was denied, and the Harvard action was dismissed after he failed to comply with orders requiring disclosure of his identity. But, a plaintiff's personal decision not to litigate openly does not overcome the public interest in open proceedings. *See Megless*, 654 F.3d at 410-11; *see also Doe v. Rider Univ.*, No. 16-4882, 2018 WL 3756950, at *7 (D.N.J. Aug. 7, 2018) (noting that "Plaintiff's refusal to bring claims for fear of public identification does not justify anonymity without further support"); *Doe v. Princeton Univ.*, No. 20-4352 (BRM), 2020 WL 3962268,

at *4 (D.N.J. July 13, 2020) (finding that while plaintiff indicated that he may not proceed if forced to reveal his name, that alone cannot outweigh the public interest in open judicial proceedings).

If the rule was otherwise, any litigant could manufacture a factor favoring anonymity merely by conditioning continued litigation on proceeding under a pseudonym. Doe's choices in the Harvard and Dartmouth cases may establish that *he* prefers abandonment to public identification, but they do not establish that the resulting dismissal of his claims creates a countervailing interest sufficient to overcome the ordinary rule of open litigation. The District Court correctly rejected Doe's argument that denying him leave to proceed anonymously "will have a chilling effect on civil rights litigation generally." (Mem. Op., R. 11, at 13, JA18.) Doe focuses his argument on a footnote in the District Court's opinion citing the United States Courts Federal Judicial Caseload Statistics, but his focus is misplaced, as the District Court did not rest its analysis on those statistics. Doe has not presented any facts to support his claim that denying him anonymity will have a chilling effect generally.

**b. The District Court Did Not Abuse Its Discretion in Finding That the Bases for Anonymity Were Not Substantial**

The second *Megless* factor considers "the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases." 654 F.3d at

409. For substantially the same reasons discussed in Argument Section II, this factor does not favor Doe.

Doe's asserted bases for anonymity are his prediction of professional blacklisting, the social stigma he anticipates from public association with his Complaint, and a claimed safety risk inferred principally from acts of violence involving prominent, unrelated third parties. The District Court considered those asserted harms at length and found them speculative, insubstantial, and unsupported by an individualized threat. (Mem. Op., R. 11, at 6-12, JA11-17.)

Nothing in Doe's Opening Brief demonstrates that this assessment was an abuse of discretion. As discussed above, this Court and courts within this Circuit have consistently found that reputational harm, economic harm, professional harm, and embarrassment are inadequate justifications for the extraordinary remedy of allowing a plaintiff to proceed under a pseudonym. *See Coll. of N.J.*, 997 F.3d at 495-96 (fear of harassment, reputational damage, economic harm, and professional stigma were not enough for this Court to overturn a denial of motion to proceed under a pseudonym); *K.W. v. Holtzapple*, 299 F.R.D. 438, 439-42 (M.D. Pa. 2014) (fears of embarrassment in front of peers and professors, along with the possibility of denial of future employment benefits, is not enough). The District Court relied on this Court's own analysis in reaching its conclusion. (*See* Mem. Op., R. 11, at 6-11, JA11-16 (citing *University of Pennsylvania*, 2024 WL 2575702 (affirming the denial

of pseudonymity where the plaintiff claimed that disclosure could affect medical-school admission and future employment); *see also Temple Univ.*, 2014 WL 4375613, at *2 (holding that fear of damage to one's "personal and professional reputation" and diminished chances to attend medical school is "the kind of embarrassment and economic harm that does not support the use of a pseudonym" (quotations omitted)).)

### c. The District Court Did Not Abuse Its Discretion in Finding No Countervailing Public Interest in Maintaining Doe's Confidentiality

The third *Megless* factor examines "the magnitude of the public interest in maintaining the confidentiality of the litigant's identity." 654 F.3d at 409. A relevant consideration is whether disclosure would deter "other similarly situated litigants" from pursuing claims "the public would like to have litigated." *Id.* at 410.

Doe offered no evidence supporting this factor. Doe did not identify any similarly-situated applicants who require anonymity to bring Title VI admissions claims. He submitted no declaration, study, empirical evidence, or history of comparable claims going unfiled because prospective plaintiffs would have to identify themselves. Nor did he identify a recognized vulnerability or unusually sensitive subject matter that would explain why litigants bringing this category of discrimination claim generally cannot proceed publicly.

Doe's own litigation history does not establish the required public interest. As noted, Doe abandoned his Dartmouth action after pseudonymity was denied and did not comply with the disclosure requirement in his action against Harvard. That evidence may show that Doe himself is deterred by public identification. But *Megless* asks whether *other* similarly-situated litigants will be deterred from pursuing claims that the public would want litigated. *Id.* Doe cannot satisfy that broader inquiry simply by pointing to his own refusal to proceed publicly.

Doe again criticizes the District Court for observing that federal civil-rights filings have generally increased, arguing that aggregate civil-rights statistics cannot answer the claim-specific deterrence question. (Opening Br. at 29.) Even assuming Doe is correct that this broader statistic does not, by itself, resolve whether similarly-situated Title VI plaintiffs would be deterred, the observation was unnecessary to the District Court's ruling. Doe bore the burden of establishing a public interest in maintaining his confidentiality, and he offered no such evidence.

**d. The Remaining *Megless* Factors Likewise Weigh Against Doe's Use of a Pseudonym and Support the District Court's Decision**

The remaining factors provide no basis to disturb the District Court's ruling. The fourth factor asks whether, "because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities." *Megless*, 654 F.3d at 409. There is not. Doe's suit challenges an individualized admissions decision concerning him alone, and the University's

reasons for denying him admission. His identity is not irrelevant to the factual controversy. Moreover, Doe's related litigation in other fora makes his identity more—not less—relevant to public understanding. He has filed substantially similar claims arising from separate admissions decisions by Harvard, Dartmouth, and the University of California. Public identification permits courts and the public to understand that these are claims advanced by the same applicant, rather than independent allegations made by unrelated individuals, and to recognize related proceedings and representations made across those cases.

The sixth factor—whether Doe seeks anonymity for an illegitimate ulterior motive—does not support Doe's arguments on appeal. *Id.* Doe did not address this factor below, and the District Court found no evidence of an illegitimate motive. (Mem. Op., R.11, at 13, JA18.) The District Court therefore treated that factor as neutral, and not advancing Doe's efforts to overcome the presumption of disclosure. (*Id.*) That was not an abuse of discretion.

The remaining factors weigh against anonymity. The seventh factor considers "the universal level of public interest in access to the identities of litigants"; the eighth considers whether the subject matter or other circumstances create a "particularly strong interest" in knowing the litigant's identity; and the ninth considers whether opposition to pseudonymity is illegitimately motivated. *Megless*, 654 F.3d at 409.

Doe's arguments substantially understate the interests on this side of the scale. There always exists a "thumb on the scale" in favor of open judicial proceedings. *Coll. of N.J.*, 997 F.3d at 496. Party identity is itself "an important dimension of publicness" because "[t]he people have a right to know who is using their courts." *Megless*, 654 F.3d at 408. Doe failed to explain how revealing his identity "only to the University's counsel would ***not*** prejudice the University in discovery and the course of litigation," prompting the District Court to reasonably find prejudice in forcing a named institution to defend serious public accusations lobbed "from behind a cloak of anonymity." (Mem. Op., R. 11, at 14, JA19.) And, Doe's proposal to reveal his identity privately to the University and its attorneys also does not satisfy the public interest. As the District Court correctly explained: "The presumption is the public has a right to access judicial proceedings and it is Mr. Doe's burden to show his reasonable fear of severe harm creates an exception," but he "did not make this showing." (Mem. Op., R.11, at 13-14, JA18-19.)

The nature of Doe's allegations makes the asymmetry of his request particularly stark and the public interest "particularly strong." *Megless*, 654 F.3d at 409. Doe publicly alleges that the University is "controlled by the genocidal Jewish Supremacists" and that non-Jewish White male applicants must demonstrate a willingness to "die4israel" or "get f****d up the a*s" in order to obtain access to prestigious educational programs. (Compl., R. 1, at 4, JA31.) The University must

defend its admissions practices, personnel, and institutional community publicly against those virulently antisemitic, homophobic, and anti-veteran accusations, and any further invective with which Doe chooses to embellish his filings. Permitting Doe to conceal his identity would impose the public and reputational consequences of the litigation entirely on the University while insulating Doe from the ordinary accountability associated with publicly invoking the judicial process and doing nothing to disincentivize Doe from engaging in further abusive conduct. It is entirely legitimate for the University to oppose pseudonymity when it would result in such conditions, and it was not an abuse of discretion for the District Court to have found that "[t]he remaining three *Megless* factors disfavor anonymity." (Mem. Op., R.11, at 13, JA18.)

* * *

The District Court's balancing of the *Megless* factors and conclusion that Doe failed to overcome the strong presumption in favor of open judicial proceedings independently support the District Court's ruling and provide an additional basis on which to affirm.

## IV. The District Court Did Not Abuse Its Discretion by Declining to Grant "Provisional" Pseudonymity

Doe asserts that the District Court erred in denying "provisional, pretrial pseudonymity subject to reevaluation," asserting that in some cases, courts have permitted this relief, and that pre-trial, "public interests have no present force and

the litigant's interest is at its irreversible maximum." (Opening Br. at 33-35.) Doe did not advance this argument below and presents no exceptional circumstances to warrant departure from the rule of preservation that bars this Court from considering new issues raised for the first time on appeal. *See Williams v. Pennsylvania State Univ.*, No. 23-3180, 2025 WL 971670, at *3 n.6 (3d Cir. Apr. 1, 2025) ("Absent exceptional circumstances (which are not present here), we do not consider new issues raised for the first time on appeal.") (citing *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 88 n.12 (3d Cir. 2013)), *cert. denied*, 146 S. Ct. 245 (2025).

Even setting aside Doe's failure to preserve this argument, none of the cases on which Doe relies are from this Circuit, and none are factually similar because those other cases involve victims of sexual assault and abuse, which courts often agree present exceptional circumstances of a deeply intimate nature that warrant anonymity. *See Williams v. New Mexico State Univ.*, 348 F.R.D. 694 (D.N.M. 2025) (permitting use of pseudonym by victims of sexual assault); *Doe 167 v. Sisters of Saint Francis of Colorado Springs*, No. 1:20-cv-00907, 2021 WL 664006 (D.N.M. Feb. 19, 2021) (permitting use of pseudonym by minor child victims of sexual abuse); *Doe 1 v. Eastern New Mexico Univ. Bd. of Regents*, No. 23-cv-0362, 2024 WL 36060 (D.N.M. Jan. 3, 2024) (permitting use of pseudonym by victims of sexual assault). Doe offers no reason why the rationale supporting anonymity in these cases should have been extended to him.

Additionally, Doe cites no authority for his proffered principle that the public's interest in open proceedings has "no present force" at the pleading stage. (Opening Br. at 34.) To the contrary, Doe specifically asserts that his parallel litigation against other universities has generated "press coverage of international circulation and of widespread public commentary." (Opening Br. at 36.) Doe likewise cites no authority for the purported principle that a litigant's interest is at its "irreversible maximum" at the pleading stage, nor is it axiomatic: revelation of a previously-anonymous litigant's identity is always irreversible. (Opening Br. at 34.) In any event, as discussed extensively in Argument Section III, *supra*, the District Court specifically addressed both the public's interests and Doe's interests in its ruling. Doe does not offer any basis on which to determine that the District Court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors," other than that he disagrees with that conclusion. *Oddi*, 234 F.3d at 146 (quotations omitted). Accordingly, the District Court did not abuse its discretion by not granting Doe "provisional" pseudonymity.

## V. Alleged Post-Order Developments Provide No Basis to Vacate and Remand

Doe urges the Court to consider "developments postdating the [District Court] ruling," despite recognizing that the Court cannot "receive or weigh matter outside the record." (Opening Br. at 36.) Specifically, Doe asks this Court to consider that, in the time following the District Court's ruling, the underlying litigation "has

become the subject of press coverage of international circulation and of widespread public commentary characterizing its author in precisely the terms whose stigmatic force [his] memorandum below predicted." (*Id.*) Doe asserts that "[a] speculativeness finding cannot usefully be reviewed – or left standing – when the parties dispute whether intervening events have overtaken it." (*Id.*) Doe suggests that this Court "remand on a limited basis while retaining jurisdiction," pursuant to Fed. R. App. P. 12.1, should he file "a renewed motion for leave to proceed under pseudonym" in the District Court, and should the District Court "indicate that it would grant the motion." (*Id.* at 37.)

Doe is correct that on appeal, the record is limited to "(1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk." Fed. R. App. P. 10(a). Accordingly, Doe's vague references to subsequent "press coverage" and "public commentary" are not part of the record and cannot be considered by this Court. Moreover, after Doe filed a renewed motion for leave to proceed under pseudonym on August 23, 2026, the District Court issued an order "to maintain the status quo pending [,] given the same issues presently before the Court of Appeals (ECF 17) so as to not require multiple filings[,] mindful we will require the Plaintiff to identify himself in pleadings should the Court of Appeals affirm our May 28, 2026 Order (ECF 12)." (Order, R. 26.) As such, Fed. R. App. P. 12.1(b) does not apply,

as it permits remand only "[i]f the district court states that it would grant the motion or that the motion raises a substantial issue…." Aside from Fed. R. App. P. 12.1, Doe cites no authority for his argument that "speculativeness findings" should not be "left standing" when relevant intervening facts come to light. As a result, Doe cites no applicable procedural basis for the relief he seeks.

Most importantly, the District Court's ruling did not rest solely on a finding that the harm Doe asserted was speculative. The District Court, citing *Megless*, specifically found that even if Doe *had* alleged severe harm, his desire to avoid notoriety and the "embarrassment and economic harm" it may occasion was insufficient under the law to justify the extraordinary relief of litigating under a pseudonym. *See* Argument Section III, *supra*; (Mem. Op., R. 11, at 11-14, JA16-19). For this reason, further evidence that such "embarrassment and economic harm" may come to pass if Doe's identity is revealed is of no moment. Accordingly, Doe's allegations of "post-order developments" provide no basis to vacate and remand the District Court's Order.

**CONCLUSION**

For each of the foregoing reasons, the University respectfully requests that this Court affirm.

Respectfully submitted this 2nd day of September, 2026.


**SAUL EWING LLP**

By: *s/ James A. Keller*

James A. Keller (PA 78955)
Patrick F. Nugent (PA 313979)
1735 Market St., 34th Floor
Philadelphia, PA 19103
P: 215-972-1964 / -7134
F: 215-972-4152 / -7725
james.keller@saul.com
patrick.nugent@saul.com

*Counsel for Appellee Trustees of the University of Pennsylvania*

# CERTIFICATE OF BAR ADMISSION

**3d Cir. L.A.R. 28.3(d) Bar Membership Certification**

Pursuant to Third Circuit Local Rule of Appellate Procedure 28.3(d), Appellee Trustees of the University of Pennsylvania hereby certifies that James A. Keller and Patrick F. Nugent of Saul Ewing LLP are members of the bar of this Court.

Dated: September 2, 2026

*s/ James A. Keller*

James A. Keller (PA 78955)
SAUL EWING LLP
1735 Market St., 34th Floor
Philadelphia, PA 19103
P: 215-972-1964
F: 215-972-4152
james.keller@saul.com

*Counsel for Appellee Trustees of the University of Pennsylvania*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE OF APPELLATE PROCEDURE 31.1(C)**

I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains **10,542** words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the SentinelOne 24.2.3.471 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: September 2, 2026 *s/ James A. Keller*

James A. Keller (PA 78955)
SAUL EWING LLP
1735 Market St., 34th Floor
Philadelphia, PA 19103
P: 215-972-1964
F: 215-972-4152
james.keller@saul.com

*Counsel for Appellee Trustees of the University of Pennsylvania*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that a copy of the foregoing Brief was electronically filed with the Clerk of the Court using the CM/ECF system. I further certify that Plaintiff has been served with this Brief via the CM/ECF system, U.S. Mail, and email at his listed addresses:

John Doe
PO Box 151133
Los Angeles, CA 90015
johndoediscriminationsuit@gmail.com

Dated: September 2, 2026

*s/ James A. Keller*

James A. Keller (PA 78955)
SAUL EWING LLP
1735 Market St., 34th Floor
Philadelphia, PA 19103
P: 215-972-1964
F: 215-972-4152
james.keller@saul.com

*Counsel for Appellee Trustees of the University of Pennsylvania*